**David PETHTEL, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 3–181A19.**

Court of Appeals of Indiana, Fourth District.

Nov. 2, 1981.

Rehearing Denied Jan. 7, 1982.

Stuart W. Hyvonen, Rensselaer, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Presiding Judge.

David Pethtel is appealing his conviction for criminal deviate conduct and attempted rape, contending the trial court erred (1) in denying his motion to dismiss both charges in light of the fact he was not brought to trial within 180 days of his request for final disposition pursuant to the Interstate Agreement of Detainers, IC 35–2.1–2–4 (Burns Code Ed.)[1]; and (2) in denying, with respect to the charge of attempted rape, his motion for judgment notwithstanding the verdict, since there allegedly was insufficient evidence to support such charge. We affirm.

### I.

We first address Pethtel's contention both counts of his indictment should have been dismissed pursuant to the Interstate Agreement of Detainers statute. He contends that based on the provisions of Article 3 of the statute the charges should have

---

1. The current law, effective June 1, 1981, appears at Ind.Code 35–33–10–4.

been dismissed because he was not brought to trial within 180 days of a request for final disposition which he tendered from a Texas correctional facility where he was serving time for burglary. The language of the applicable statute, which the parties agree has been enacted by Texas as well as Indiana, provides in pertinent part:

"Article 3

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred eighty (180) days* after he shall have counsel to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present; the court having jurisdiction of the matter may grant any necessary or reasonable continuance. . . .

(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of correction or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested." (Emphasis added.)

In ruling on Pethtel's motion to dismiss, the trial court recited the following uncontradicted facts in its order: On February 14, 1979, the charges relevant to this appeal were filed against Pethtel. Thereafter, he submitted, pursuant to IC 35–2.1–2–4, *supra*, the appropriate notice of his imprisonment in Texas and his request for a final disposition of the Indiana charges, which documents were received by the Jasper County, Indiana circuit court clerk and prosecutor's office on July 6, 1979 and July 9, 1979 respectively. On December 6, 1979, Pethtel was returned to Indiana for arraignment and counsel was appointed. And on December 10, which was approximately four weeks before the 180-day time limit would expire, the trial court (with Pethtel and his counsel present) set a trial date of March 11, 1980 for the Indiana charges. Pethtel filed his motion to dismiss on February 6, 1980.

After summarizing the above facts, the trial court concluded, based on case law interpreting the analogous 70-day "early trial" provision of Ind.Rules of Procedure, Criminal Rule 4(B), that Pethtel "acquiesced to being tried after the 180-day period" proscribed by the Interstate Agreement of Detainers by failing to object during such period to the March 11 trial date which was set in December. Accordingly, his motion to dismiss was denied, and trial was ultimately held, after continuances,[2] on July 29, 1980.

We agree with the trial court's application of the Interstate Agreement of Detainers statute based on the analogous case law pertaining to C.R. 4(B).

On appeal, Pethtel correctly observes no Indiana authority has defined the circumstances under which a defendant may be entitled to have an indictment dismissed pursuant to the applicable 180-day time limit. Such question has not specifically been presented to an appellate court of this State, although our Supreme Court has generally construed the statute in concluding that "notice under the statute is not effective" in tolling the 180-day restriction until it has been delivered to the prosecuting attorney and the appropriate court having jurisdiction, *Holland v. State*, (1976) 265 Ind. 216, 223, 352 N.E.2d 752, 757, and in concluding in the same case that a defend-

---

2. Pethtel presents no argument such continuances were not granted in accordance with the requirements of the agreement of Detainers, and, accordingly, we do not address such issue.

ant may waive his right to a trial within 180 days under the interstate statute by exercising his right to have a mistrial declared and a new trial set at a later date. *Id.* at 224, 352 N.E.2d at 757–58.

In interpreting the speedy trial rights created by the Interstate Agreement of Detainers, however, we find the case law pertaining to Criminal Rule 4(B) to be instructive. The language of that Rule, which is obviously similar in design to the interstate statute, provides in part as follows:

"Criminal Rule 4

. . . . .

(B)(1) Defendant in jail—Motion for early trial. If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule."

With respect to Criminal Rule 4(B), our Supreme Court has held a defendant is not entitled to discharge where he has notice a trial date will be set beyond the time period permitted by the Rule and yet does not object "at a time when the court could . . . grant him a trial date within the proper period." *Arch v. State*, (1978) 269 Ind. 450, 453, 381 N.E.2d 465, 467, *citing Serrano v. State*, (1977) 266 Ind. 126, 360 N.E.2d 1257; and *Buchanan v. State*, (1975) 263 Ind. 360, 332 N.E.2d 213. In *State ex rel. Wickliffe v. Judge of Criminal Court*, (1975) 263 Ind. 219, 222, 328 N.E.2d 420, 422, the Court explained its conclusion as follows:

"The logic of such holding is that while a defendant may not be required to take affirmative action to bring himself to trial, other than to request an early trial if desired, if he sits idly by at a time when the court could yet grant to him a trial date within the proper period and permits the court, without objection, to set a date beyond the expiration of such period, he will be deemed to have acquiesced therein. '. . . The courts are under legal and moral mandate to protect the constitutional rights of accused persons, but this should not entirely relieve them from acting reasonably in their own behalf. We will vigorously enforce the right to a speedy trial, but we do not intend that accused persons should escape trial by abuse of the means that we have designed for their protection.' *Utterback v. State*, (supra) [(1974) 261 Ind. 685, 688, 310 N.E.2d 552, 554]."

We find this same reasoning to be applicable to the instant case involving the Interstate Agreement of Detainers.[3] As noted above, Pethtel was arraigned in Indiana and counsel appointed on December 6, 1979.

---

**3.** In so concluding, we find no merit in Pethtel's suggestion. *Heflin v. State*, (1981) Ind., 416 N.E.2d 121 holds that the reasoning of such case law is inapplicable to the enforcement of the Interstate Agreement of Detainers statute. That case merely stands for the proposition that since C.R. 4(B) itself does not apply to a defendant who is incarcerated in another jurisdiction, our courts will not entertain a claim of ineffectiveness of counsel for failure to assert speedy trial rights based on the 70-day time limits of that Rule where the defendant's rights are instead governed by the 180-day provisions of the Agreement of Detainers.

Similarly, *Smith v. State*, (1977) 267 Ind. 167, 368 N.E.2d 1154, also cited by Pethtel, determined merely that it is "irrational" to apply the time limits of C.R. 4(B) to a defendant being held for trial in another jurisdiction since such defendant is not within the exclusive control of the State of Indiana, but is instead "incarcerated in another jurisdiction which has an interest in retaining the defendant in its custody. . . ." *Id.* at 171, 368 N.E.2d at 1156. The Court held that in such circumstances the defendant's *constitutional* right to speedy trial is determined in accordance with the general principles established in *Smeltzer v. State*, (1970) 254 Ind. 165, 258 N.E.2d 647. Within the meaning of *Smeltzer*, we believe the record in the case at bar reveals "a diligent, good-faith effort has been made under the circumstances" to insure Pethtel's right to speedy trial. *Id.* at 170, 258 N.E.2d at 650.

On December 10, the court set his trial for March 11, 1980, a date clearly beyond the 180-day constraints of the interstate detainer statute. Significantly, however, Pethtel did not object to such trial date at the time it was set nor did he object during the remaining time under the 180-day limit, consisting of approximately four weeks.[4] Had he done so, it is apparent the trial court could either have set an appropriate trial date, or, in the alternative, granted a "necessary or reasonable continuance" for good cause shown as provided in IC 35–2.1–2–4, *supra*. Instead of apprising the court of his objection at the first available opportunity, however, Pethtel instead waiting until February 6, 1980, a month after the 180-day limit elapsed, to assert his argument by means of a motion to dismiss.

On these facts revealing Pethtel's own acquiesence in the trial date which was set, we conclude, based on the reasoning of *Arch v. State, supra* and related cases, he is thereby precluded from having his indictments dismissed under the Interstate Agreement of Detainers.[5] *See generally Foran v. Metz* (S.D.N.Y.1979) 463 F.Supp. 1088, holding a defendant could not complain under Article 4 of the interstate act (imposing a 120-day speedy trial requirement) with respect to delays occasioned by the court's consideration of a co-defendant's discovery motion, where the defendant had notice of the motion and made no objection to the delays it would engender.

## II

Pethtel additionally contends there was insufficient evidence to support a con-

viction for attempted rape and that the judgment was therefore contrary to law and the trial court erred in denying his motion for judgment notwithstanding the verdict with respect to such charge.

He specifically contends there was no evidence of attempted rape because "[t]he defendant did not attempt penetration, as evidenced by the victim's testimony."

The Indiana attempt statute is contained in Ind.Code 35–41–5–1, which reads in pertinent part as follows:

"(a) a person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime."

The crime of rape is defined by Ind.Code 35–42–4–1 as follows:

"(a) A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:

(1) the other person is compelled by force or imminent threat of force; ... commits rape, ..."

Sexual intercourse includes "any penetration of the female sex organ by the male sex organ." Ind.Code 35–41–1–2. In addition, pursuant to Ind.Code 35–41–2–2,

"(a) A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so.

(b) A person engages in conduct 'knowingly' if, when he engages in the conduct,

---

4. Since it is evident Pethtel had almost a month from December 10 to file his objections, we are unpersuaded by the suggestions in his brief he was somehow precluded from making an appropriate objection due to the fact his court-appointed attorney withdrew because of a conflict and a new attorney was appointed on that date.

5. Nor do we find persuasive Pethtel's further suggestion he could not make an appropriate objection until the State was ordered to comply (on January 21, 1980) with a discovery motion filed December 17, 1980. In his Motion to Correct Errors he merely asserts "*[p]resumably* this date would have been the earliest that counsel could have learned of the contents of

the prosecutor's file concerning the return on the agreement on detainers" (emphasis added) showing the dates when his request for a final disposition was received by the prosecuting attorney for Jasper County. We observe, however, that Pethtel's own Motion to Dismiss alleged his Notice of Place of Imprisonment and Request for Disposition were sent "by certified mail, return receipt requested" as specified by the Agreement of Detainers, *supra*, and on such a record, we cannot presume he did not have knowledge of when the relevant documents were received. Interestingly, Pethtel's discovery motion did not specifically request such information.

he is aware of a high probability that he is doing so."

With these statutory definitions in mind, we find there was sufficient evidence by engaging in a "substantial step toward commission of the crime" with the requisite culpability. IC 35–41–5–1, *supra.* The record reveals Pethtel removed or forced his victim to remove her clothes, then took down his own pants, ordered the victim to lie down on a bed and spread her legs apart, then lay on top of her and pressed his penis against her vagina. The victim testified Pethtel "asked me if I had ever had it done to me before" and that after she told him she was a virgin "[h]e said he wanted to just press up against me." We believe such conduct, in its natural and usual sequence, constituted a substantial step toward sexual penetration and evidences the requisite intent for attempted rape. *See Himes v. State,* (1980) Ind., 403 N.E.2d 1377; *Byassee v. State,* (1968) 251 Ind. 114, 239 N.E.2d 586; and *Dixon v. State,* (Ind.App., 425 N.E.2d 673, 1981). The jury was not required to believe Pethtel did not intend to commit rape merely because he may have told his victim "I'm not going to stick it in you" [6] since the record is replete with evidence he did intend to commit rape and that his actions were a substantial step in furtherance of such aim. *Compare Barnes v. State,* (1980) Ind., 403 N.E.2d 331, where the defendant grabbed the victim, held her at knifepoint and threatened to commit a deviant sexual act, then fled, and our Supreme Court concluded there was no evidence the defendant attempted to commit rape as charged. As our Supreme Court observed in *Byassee v. State, supra* at 118, 239 N.E.2d at 588, *quoting Hanes v. State,* (1900) 155 Ind. 112, 116, 57 N.E. 704, 705:

> "Intent is a mental function, and, where not consummated, (and indeed even then), it is impossible to know with absolute certainty, what was operating in the actor's mind; and in such cases it must be arrived at by courts and juries from a

consideration of the conduct and natural and usual sequence to which such conduct logically and reasonably points."

Affirmed.

HOFFMAN, P. J. (sitting by designation), and YOUNG, J., concur.

---

**6.** At trial, the victim merely testified "I asked him if he was going to stick that in me, and he didn't really answer," although the transcript of the probable cause reveals the victim stated at such hearing Pethtel told her "just lay down, I'm not going to stick it in you I just want rub on you [sic]."