**William G. WEBB, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 379S85.**

Supreme Court of Indiana.

July 30, 1982.

William G. Webb, pro se.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a pro se appeal from a conviction for murder in the first degree, Ind. Code Ann. § 35–13–4–1 (Burns 1975) (repealed), and for assault and battery with intent to kill, Ind. Code Ann. § 35–13–2–1 (Burns 1975) (repealed). The defendant-appellant, William G. Webb, was sentenced to life imprisonment and two to fourteen years' imprisonment on the respective counts, the terms to be served concurrently with each other and to begin upon the expiration of a term of thirty years' imprisonment imposed upon his conviction in federal court for interstate transportation of explosives. The defendant's first appeal was dismissed without a determination of the merits, *Webb v. State*, (1980) Ind., 412 N.E.2d 790, but was reinstated upon his motion to proceed pro se.

The following issues are raised:

(1) Whether the trial court erred in denying the defendant's motion to dismiss the indictment.

(2) Whether the defendant was denied his right under the Sixth and Fourteenth Amendments to the United States Constitution to confront witnesses against him.

(3) Whether the defendant was denied his right under the Sixth and Fourteenth Amendments to the United States Constitution to a speedy trial.

I.

On August 26, 1976, the defendant was charged by indictment with the crimes, but trial did not begin until September 12, 1978. On June 7, 1978, he filed a motion to dismiss the indictments, alleging a violation of rights under Art. 4 of the Agreement on Detainers, Ind. Code Ann. § 35–2.1–2–4 (repealed effective September 1, 1982) (the Agreement).

The defendant was serving his federal prison sentence at Leavenworth (Kansas) Prison when, on November 14, 1975, the Johnson County Prosecutor's Office lodged a detainer against him based on a warrant for first-degree murder. A detainer is "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." *United States v. Mauro*, (1978) 436 U.S. 340, 359, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329, quoting H.R. Rep. No. 91–1018, p. 2 (1970); S.Rep. No. 91–1356, p. 2 (1970).

The United States is a party to the Interstate Agreement on Detainers, 18 U.S.C.A. App., and is a "state" for the purposes of the Agreement.

Starting in August, 1976, the defendant was returned to Indiana for criminal proceedings four times, pursuant to writs of habeas corpus ad prosequendum issued by Indiana courts at the request of Indiana authorities. A writ of habeas corpus ad prosequendum is a "written request for temporary custody" within the meaning of Art. 4 of the Agreement, and therefore triggers the operation of its provisions for prompt disposition of the charges underlying the detainer. *Mauro v. United States, supra*, at 436 U.S. 361, 98 S.Ct. at 1848.

The defendant claims that on three occasions he was returned from Indiana to federal prison without having been put to trial on the charges, in violation of Art. 4(e) of the Agreement, which provides:

"If the trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article 5(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

Article 5(e) provides: "At the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending state."

Article 4(e) mandates that the state receiving a prisoner under temporary custody

pursuant to the Agreement try the prisoner on the outstanding charge before returning him to the state in which he was previously imprisoned.

Only one of the returns without trial is available for review because the statement of facts and grounds supporting the defendant's motion to correct error has limited his claim to a return to the United States Penitentiary at Terre Haute, Indiana, March 23, 1978. Ind.R.Tr.P. 59(G) (formerly Ind.R. Tr.P. 59[B] ). *Guardiola v. State*, (1978) 268 Ind. 404, 375 N.E.2d 1105.

■ The State obtained temporary custody of the defendant, via a writ of habeas corpus ad prosequendum, in January, 1978, and the defendant was returned to the United States Penitentiary without having been tried. The defendant had a right to dismissal of the Indiana charges, with prejudice, unless he waived that right. He claims that the State has the burden of proving "an intentional relinquishment or abandonment of a know right or privilege" as required by *Johnson v. Zerbst*, (1938) 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, for the waiver of fundamental constitutional rights. The main purpose of the Agreement is to provide for expeditious disposition of all outstanding charges which may affect the conditions or duration of imprisonment and treatment. Article 4(e) protects a prisoner's interest in uninterrupted participation in the rehabilitation programs in the original place of imprisonment, and prevents prosecutorial abuse of the simplified method for obtaining prisoners under the agreement, by imposing the sanction of dismissal with prejudice. The right is not of constitutional magnitude. The *Johnson v. Zerbst* standard for finding a waiver does not apply. The majority of jurisdictions considering the issue of waiver of rights under Art. 4(e) has found that the waiver need only meet a voluntariness standard. We adopt this approach. In *United States v. Eaddy*, 595 F.2d 341 (6th Cir. 1979), for example, the Court of Appeals held that the Art. 4(e) right could be waived if a prisoner or his attorney requested a return to the place of original imprisonment before being tried in the receiving state even though the prisoner may not have been aware of the right. See also *United States v. Palmer*, 574 F.2d 164 (3rd Cir. 1978), *cert. denied*, 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1138; *Camp v. United States*, 587 F.2d 397 (8th Cir. 1978); *United States v. Scallion*, 548 F.2d 1168 (5th Cir. 1977), *cert. denied*, 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784.

■ In the present case, the record shows that the defendant in January, 1978, sent a letter to United States District Court Judge William Steckler requesting that he be returned to Leavenworth or transferred to Jefferson County where the cause had been venued. On March 23, 1978, he was returned to federal prison in Terre Haute where he had been temporarily transferred by federal prison authorities.

Thus his return without having been tried was occasioned by his own conduct, and his right under Art. 4(e) was waived.

II.

■ The defendant next claims that during the delay between the offense charged and the trial, one of the "key witnesses" died, and he was deprived of his right to confront this witness against him. This claim is based merely on assertion in the brief and was not raised at trial. In fact, the record reveals that a deposition of Joe Baker, the dead "key witness" was read into the record and that the defense stated that it had no objection to this. Only when the record reveals clearly blatant violations of basic and elementary principles, and the harm or potential for harm cannot be denied, will this Court review an issue not properly raised and preserved. *Nelson v. State*, (1980) Ind., 409 N.E.2d 637.

III.

Finally, the defendant claims that his right, under the Sixth Amendment to the United States Constitution, to a speedy trial was denied. This issue was not raised directly below, but was claimed as a basis for a writ of habeas corpus addressed to the Johnson County Circuit Court in May, 1977.

In reviewing a speedy trial claim, appellate courts consider the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker v. Wingo*, (1972) 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. In denying the defendant's speedy trial claim in *Barker*, the Supreme Court said:

"barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates ... that the defendant did not want a speedy trial." *Id.* at 536, 92 S.Ct. at 2195.

The defendant's original arraignment was scheduled for September 20, 1976, but was postponed to January 13, 1977, because of the defendant's agreement to continue the matter and his own motion for continuance, his motion for a change of venue, his motion for a change of judge, and his motion to dismiss (on the ground that the indictment was defective) and the hearings thereon. At the January 13, 1977, arraignment, moreover, the defendant specifically declined to request a speedy trial.

In addition, the record shows that thereafter the defendant sought a second change of venue, and that when the trial was set for April 4, 1977, he agreed to a continuance. Then the defendant occasioned further delay by petitioning for a writ of habeas corpus. On November 1, 1977, the case was set for trial on January 9, 1978. On that day the defendant made a motion for a continuance, which was denied, but the parties agreed to a change of venue to Jefferson County. Trial was set in Jefferson County for July 10, 1978, but that date was vacated upon defendant's motion in order that hearings on his motion to dismiss could be held.

The record in this case "strongly indicates" that the defendant did not want a speedy trial.

The defendant was not deprived of his right to a speedy trial. The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.