564 A.2d 109

**Gerald T. BUNTING**

v.

**STATE of Maryland.**

**Nos. 151, 152, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Oct. 4, 1989.

Saul Z. Reese, Baltimore, and William A. Lee Clarke, III, Salisbury, for appellant.

Audrey A. Creighton, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Logan C. Widdowson, State's Atty. for Somerset County, Princess Anne, on the brief), for appellee.

Argued before WILNER, GARRITY and BLOOM, JJ.

BLOOM, Judge.

A jury in the Circuit Court for Somerset County convicted appellant, Gerald T. Bunting, of felony theft. Three days later, a second charge of felony theft, arising from the same transaction, was tried before the court on an agreed statement of facts, and appellant was again convicted. The court imposed concurrent sentences of fifteen years imprisonment, with all but twelve years suspended and with five

years probation to follow release from prison, and ordered restitution. Twenty-five additional theft charges, all arising out of the same occurrence, were stetted pending the outcome of this consolidated appeal from the judgments in the two cases that were tried.

Appellant raises five issues, of which we need consider only the first: whether the court erred in denying appellant's motion to dismiss all of the theft charges because of the single transfer rule of the Interstate Agreement on Detainers. Based on the facts of this case, we conclude that denial of appellant's motion was error, for which we must reverse.

The facts relevant to this issue are far from complicated. Appellant was the managing officer and the principal, if not sole, stockholder of Haynie Grain Services, Inc., a firm engaged in the business of storing and selling grain for and on account of farmers. Needing money, appellant sold the grain (soybeans) that had been stored in the granary by a number of farmers, none of whom had authorized him to sell. He pocketed the proceeds, intending, he claims, to replace the grain before the loss was discovered. He failed to do so. Haynie Grain Services became insolvent and went into bankruptcy, and appellant was charged with theft from all of the farmers who had deposited grain with Haynie Grain Services, a separate criminal charging document being issued for each farmer or farm family whose soybeans had been sold without authority. The records in the two cases before us do not disclose how the grain was stored.[1]

Appellant's conduct had earlier resulted in a multiple count indictment, charging him with mail fraud and related

---

1. If all the soybeans were stored together as a single quantity of fungible goods of which a number of farmers were common owners in proportion to the amount of grain stored by each, a question might arise as to whether the wrongful taking and sale of the grain constituted one theft from multiple owners or, as charged against appellant, multiple thefts. That question never arose in this case, and if it had been raised we would not have been required to answer it because of our disposition of the one issue we do address.

offenses, being filed in the United States District Court for the District of Maryland. He pleaded guilty and was sentenced by the District Court prior to the filing of charges in Somerset County. The District Court sentenced him to a term of three years imprisonment and ordered him to make restitution. In the spring of 1986 appellant began to serve that sentence in the federal prison at Lewisburg, Pennsylvania. Detainers based on the Somerset County theft charges were lodged with the federal prison authorities, and appellant, upon receiving notice of those detainers in June 1986, formally requested final disposition of those charges pursuant to the Interstate Agreement on Detainers (hereinafter IAD), Md.Code Ann., art. 27, §§ 616A through 616J, inclusive.

Upon receipt of appellant's request for disposition, accompanied by the Prison Authorities Certificate of Inmate Status and Offer to Deliver Temporary Custody (Article III(a) of the Agreement), the State's Attorney for Somerset County, with the approval of the circuit court, duly accepted the offer of temporary custody of appellant in accordance with Article IV(a).

Custody of appellant was delivered to agents of the prosecutor on or about 1 August 1986. Appellant was brought before the circuit court on 4 August 1986, at which time the court conducted hearings on several pre-trial motions, applicable to all of the pending theft charges, including a motion for joint or consolidated trial of all charges, a motion for recusal of the presiding judge, and a motion to dismiss and to disqualify the State's Attorney. According to the State's brief, the motions hearing lasted one hour. All of appellant's motions were denied, and the court, apparently without any request, knowledge, or concurrence of the State's attorney or defense counsel, ordered the Sheriff of Somerset County to return appellant to the federal prison in Lewisburg the next day, August 5th.

When appellant's counsel discovered that appellant had been returned to the federal prison, he filed a motion to dismiss all the pending theft charges pursuant to Md.Code

Ann., art. 27, § 616D(d) (Article III(d) of the IAD), which specifically provides:

> If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.[2]

Appellant's motion to dismiss under this "single transfer" rule of the IAD was denied. He appealed, but his appeal was dismissed as premature, the Court of Appeals holding that the denial of a motion to dismiss pursuant to the foregoing provision of the IAD is a non-final order that is not appealable under the collateral order doctrine. *Bunting v. State*, 312 Md. 472, 540 A.2d 805 (1988).

■ Appellant relies upon the plain meaning of the clear, simple, direct, and unambiguous language of the IAD. In *Boyd v. State*, 51 Md.App. 197, 441 A.2d 1133, *aff'd*, 294 Md. 103, 447 A.2d 871 (1982), we noted that the purpose of the IAD was to provide inmates with a method of resolving the charges underlying detainers from other jurisdictions and to provide prosecutors with a means of securing inmates incarcerated in other jurisdictions for trial before expiration of their sentences. To effectuate that purpose, the Agreement

> seeks to limit the interjurisdictional transfer of prisoners by requiring that the receiving State, once it has obtained custody of the prisoner under the Act, wrap up its business with him, so to speak, before returning him to the custodial (sending) State.

*Id.* 51 Md.App. at 203, 441 A.2d 1133.

■ Under the plain meaning of the unambiguous language of the IAD, therefore, appellant was entitled to have all of the charges against him in Somerset County dismissed with prejudice. The State contends that the IAD

---

**2.** This provision is repeated in Art. IV(e).

single transfer rule does not apply because (1) appellant was brought to Maryland for the purpose of disposing of his pre-trial motions and not for trial, and (2) appellant waived the benefit of the rule by filing pre-trial motions which necessitated that he be brought to Maryland for purposes other than trial. We find no merit in those contentions or in any of the arguments the State advances in support of them.

The State begins its first argument with the assertion that appellant instigated his transportation from Lewisburg to Somerset County by filing pre-trial motions for removal and to disqualify the State's Attorney. That assertion is flat out wrong, both as a matter of fact and a matter of law. Appellant "instigated" his being taken from Lewisburg to Somerset County by filing a formal request, under the IAD, for *final disposition* of all of the charges underlying the detainers lodged by Somerset County. He made no request or demand that he be taken to Somerset County for any purpose other than final disposition.

The State's next assertion, that neither appellant, nor the State, nor the trial judge anticipated that trial on the merits would ensue before appellant was returned to Lewisburg, is also totally unsupported by the facts and is directly contrary to the provisions of the IAD. There is simply no provision in the IAD for custody of a prison inmate to be delivered over to a prosecutor in another jurisdiction for any purpose other than trial or other final disposition of charges. There is absolutely nothing in the record to indicate that appellant anticipated he would be sent back to Lewisburg without a trial. So far as the prosecutor was concerned, we must assume that he meant to keep appellant in Somerset County until all charges were disposed of, in accordance with the IAD, because that is precisely what he agreed to do when he accepted the federal prison authorities' Offer to Deliver Temporary Custody for that express purpose. We have no way of knowing what was contemplated by the circuit court judge who heard the pre-trial motions and ordered appellant's return to Lewis-

burg; he was not the same judge who had approved the prosecutor's acceptance of temporary custody under the IAD.

The State points out that the State's Attorney did not "file" the Form 7 (Prosecutor's Acceptance of Temporary Custody Offered in Connection with a Prisoner's Request for Disposition) until after appellant moved to dismiss the charge. From this fact it argues (1) that the State clearly did not intend to bring appellant to Somerset County on 4 August 1986 for the purpose of trying him and (2) that the State had not invoked the IAD for the purposes of Article III. These arguments are totally devoid of logic as well as merit. There is nothing in the IAD that requires the Form 7 to be filed in court for any purpose. Form 7 is a formal acceptance of an offer of temporary custody for disposition of pending charges. It is for the benefit of the sending authorities; it is the basis for their transfer of custody to the prosecutor who, by accepting custody, agrees to be responsible for him and to return him after the purposes of the transfer have been satisfied. A belated filing of the Form 7 cannot alter the facts that this offer of custody was for final disposition of charges and that the acceptance of custody was for that purpose. As stated *supra*, there is no authority under the IAD for the sending state to transfer custody or for the prosecutor of the receiving state to accept custody of a prisoner for any purpose other than trial or other final disposition of pending charges.

The State suggests that because appellant had filed pre-trial motions which the court had set for hearing on August 4 and because no trial date as such had been set, appellant knew or should have known that trial on the merits would not take place on August 4. The State is probably correct on this point, but it is a meaningless point. The fact that everyone concerned was or should have been aware that on 4 August 1986 the court would conduct a hearing on pre-trial motions and that trial would have to take place on a later date does not logically lead to a conclusion that it was

proper or even reasonable to return appellant to Lewisburg without trying him.

■ Pre-trial motions are certainly not uncommon. That pre-trial motions might be filed by a prisoner who had requested disposition of pending charges cannot have been beyond the contemplation of those who drafted the IAD or the legislators in the various states that adopted it. If the agreement means what it says (and as the Supreme Court pointed out in *Carchman v. Nash,* 473 U.S. 716, 724–26, 105 S.Ct. 3401, 3405–06, 87 L.Ed.2d 516 (1985), there is nothing in its legislative history to suggest that its interpretation should vary from its plain language), the answer is simple. When the receiving state accepts temporary custody of a prisoner under the IAD it is for purpose of trial or other final disposition of charges; it must keep him for as long as necessary to bring him to trial after disposing of all preliminary matters; and if it returns him before disposing of all charges underlying its detainers, the untried charges must be dismissed. *See United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *United States v. Thompson,* 562 F.2d 232 (3rd Cir.1977), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978); *United States v. Schrum,* 504 F.Supp. 23 (U.S.D.C.Kan.1980); *State v. Keener,* 224 Kan. 100, 577 P.2d 1182, *cert. denied,* 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978). Even the 180–day limitation imposed by the Agreement will not prevent the receiving state from keeping the prisoner long enough to try all charges; the court having jurisdiction may, for good cause, grant any necessary or reasonable continuance.

We turn now to the State's contention that appellant waived the benefit of the single transfer rule. That contention is based upon the assumption that appellant filed pre-trial motions "knowing full well that the State had not yet accepted temporary custody for purpose of disposing of the detainer filed against him." What we have said with respect to the State's other arguments is equally applicable to this contention. Appellant requested that Somerset County dispose of its pending charges against him. Since,

under the IAD, Somerset County could acquire custody of him only for that purpose, appellant would have no reason to expect that his pre-trial motions would lead to his being returned without having been tried, particularly in view of the single transfer rule. He sought the benefits of the IAD, and we see no basis in law or logic for the argument that, by filing motions that required disposition before trial, he waived those benefits, particularly in view of the court's disposal of those motions so expeditiously that a trial could have been conducted without any protracted delay.[3]

Accordingly, we are constrained to reverse the judgments in these cases and remand to the circuit court for dismissal, with prejudice, not only of these charges but all others that underlay the detainers filed by Somerset County with the federal prison authorities in Lewisburg.

There is one further matter before us. Pursuant to a motion filed by the State, we ordered that pages designated App. 1 through App. 5 and App. 11 through App. 35 of appellant's brief be stricken, with the costs of printing those pages to be paid by appellant regardless of the outcome of the appeal. Md.Rule 8–504(b). We shall so specify in our mandate.

JUDGMENTS REVERSED AND CASES REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS OF PRINTING PAGES APP. 1 THROUGH APP. 5 AND APP. 11 THROUGH APP. 35 OF APPELLANT'S BRIEF TO BE PAID BY APPELLANT; ALL OTHER COSTS TO BE PAID BY SOMERSET COUNTY.

---

**3.** Had appellant been successful in persuading the court to remove the trial to some distant county because of pre-trial publicity, a plausible argument might have been made that appellant forced Somerset County to return him to Lewisburg because the required transfer of appellant from the Somerset County jail to some other jurisdiction's place of confinement would be inconsistent with the grant of temporary custody to Somerset County officers. We shall not speculate on that question; the court did not grant appellant's request for removal.