STATE of Indiana, Appellant
(Petitioner Below),

v.

Robert J. GREENWOOD, Appellee
(Respondent Below).

No. 82S01–9506–CR–690.

Supreme Court of Indiana.

May 21, 1996.

Pamela Carter, Attorney General of Indiana, Geoff Davis, Deputy Attorney General, Indianapolis, for appellant.

John D. Clouse, John P. Brinson, Evansville, for appellee.

ON PETITION TO TRANSFER

SELBY, Justice.

This case raises the following three issues involving the Interstate Agreement on Detainers ("IAD"): (1) whether the defendant's demand for speedy trial was sufficient notice to trigger the 180 day time period under the IAD, (2) whether the defendant waived his right to a speedy trial when his attorney moved for a trial date outside the 180 day period, and (3) whether the state is barred from further prosecution by the anti-shuffling provision of the IAD.

The trial court dismissed with prejudice all three charges pending against Robert J. Greenwood. The trial judge found that the defendant's October 14, 1993 notice had complied with the requirements of the IAD, that the defendant had not waived his right for a trial within 180 days, and that 180 days had passed without trial. We grant transfer, and hold that there was no violation of the 180 day time period, but the anti-shuffling provision of the IAD bars further prosecution.

FACTS

In May and June 1989, Greenwood was charged in Vanderburgh County, Indiana with a variety of criminal offenses. Warrants were issued for each charge, and Greenwood was declared a fugitive. Greenwood was later incarcerated in Illinois on unrelated charges. On March 24, 1993, Illinois prison officials provided Greenwood with a "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition," relating to the Indiana charges. Greenwood refused to sign the notice to acknowledge receipt, and refused to waive extradition.

Later, Greenwood obtained representation by an Illinois attorney. On September 22, 1993, this attorney entered an appearance in Vanderburgh County and filed a "Demand For Speedy Trial By Jury." The court granted the state's motion to strike, as the attorney was not licensed to practice in Indiana. Greenwood then filed a pro se "Demand For Speedy Trial By Jury" on October 14, 1993. There is no evidence that either of these demands were presented to the warden, as required by the IAD. Hence, the warden did not forward the certificate of inmate status required by the IAD.

In February 1994, Illinois prison officials presented Greenwood with a second "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition," relating to the Indiana charges. This time Greenwood signed the notice. On February 10, 1994, Greenwood sent an "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints" to the prosecuting attorney and the trial court, requesting final disposition of the Indiana charges. Accompanying Greenwood's notice were a "Certificate of Inmate Status" and an "Offer to Deliver Temporary Custody," both completed by Illinois prison officials. The record is unclear on the date of receipt.

Greenwood was delivered to custody in Indiana on April 5, 1994. On May 9, 1994, he filed a motion for discharge pursuant to the IAD. Greenwood argued that he had not been brought to trial within 180 days from his October 14, 1993 notice, and this violated the speedy trial provision of the IAD. I.C. § 35–33–10–4, Art. 3(a). The trial judge agreed that the 180 day period had been violated. Accordingly, the trial judge dismissed the charges with prejudice. Greenwood was returned to Illinois.

The State appealed, arguing that the October 14, 1993 filing had not been made pursuant to the provisions of the IAD. Thus, according to the State, the 180 day period did not commence until receipt of the February 10, 1994 notice. Alternatively, the State argued that if the October 14, 1993 notice had been effective, Greenwood waived his right to

a speedy trial when his own attorney moved for a trial date which was outside the 180 day period. Greenwood countered the above two issues, and further argued that even if the state were correct, the IAD and principles of double jeopardy bar subsequent prosecution.

The Court of Appeals reversed, holding that the October 14, 1993 notice was not sufficient to trigger the 180 day period; thus the 180 day time period had not been violated. The Court of Appeals also found that since a jury had not yet been empaneled, jeopardy had not yet attached and further prosecution was not barred.

Subsequently, Greenwood sought transfer to this Court. Although we find the double jeopardy/subsequent prosecution issue to be dispositive in this case, we address all three issues for clarification purposes.

I. Commencement of the 180 Day Period

■ Defendant argues that both the September 22, 1993 and the October 14, 1993 notices were sufficient to trigger the speedy trial provisions of the IAD. Article 3 of the IAD provides in relevant part:

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state,[1] and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the

prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of correction or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court. . . .

I.C. 35–33–10–4.

Defendant asserts that "[t]he 180 day restriction commences when the request for final disposition made pursuant to I.C. § 35–2.1–2–4 [Burns Repl.1979], has been delivered to the prosecuting attorney and the appropriate court having jurisdiction." [2] Scrivener v. State, 441 N.E.2d 954, 956 (Ind. 1982) (citing Holland v. State, 265 Ind. 216, 352 N.E.2d 752 (1976), and Pethtel v. State, 427 N.E.2d 891 (Ind.Ct.App.1981)). As there is no dispute that the notices of September 22, 1993 and October 14, 1993 were delivered to the prosecuting attorney and the court, the defendant argues that these notices triggered the 180 day speedy trial provision of the IAD, effective on the date of delivery.

However, an inmate must do more than deliver notice in order to commence the 180 day period. Greenwood erroneously reads Scrivener, 441 N.E.2d at 956. Scrivener does in fact state that delivery of notice to the prosecuting attorney and the appropriate court commences the 180 day period. However, such notice must be made "pursuant to" the provisions of the IAD; Article 3(b) of which requires the defendant to deliver notice to custodial officials so that they can forward the notice along with appropriate certifications to prosecuting authorities. Steelman v. State, 486 N.E.2d 523, 524 (Ind. 1985); Ward v. State, 435 N.E.2d 578, 580 (Ind.Ct.App.1982).

---

1. Both Indiana and Illinois are party states to the IAD.

2. IC § 35–2.1–2–4 has been renumbered I.C. § 35–33–10–4, effective September 1, 1982.

These procedures are not mere technicalities and we have long required strict compliance. *E.g., Ward,* 435 N.E.2d at 580. Validation of information from the official having custody is important to prosecuting officials in the receiving state. *Id.* Also necessary is waiver of extradition, which was lacking in both the September 22 and October 15 demands. (R. 1, 64). Greenwood argues that although *Ward* states that strict compliance is required, the defendant in *Ward* was not held to this standard. However, in *Ward,* the defendant did all that he was capable of in order to deliver notice to his warden. Ward's only communication link to prison administration was through his case manager, whom he notified and gave a copy of the notice. That court found that notice to the case manager was sufficient custodial notice, and that Ward should not be attributed with the prison officials' subsequent failure to comply with the IAD. *Id.* at 580–81.

In the present case, there is no evidence in the record that Greenwood notified the custodial authorities of his September 22, 1993 nor his October 14, 1993 notices. Thus, he did not comply with the provisions of the IAD, and the 180 day period did not commence until receipt of the February 10, 1994 notice. Greenwood's May 9, 1994 motion for discharge was within this 180 day period, and it should have been denied.

II. Waiver of the Right to a Speedy Trial.

Even if the October 14, 1993 notice had been sufficient, the State argues that Greenwood waived his right to a speedy trial. We agree.

Assuming that the October 14, 1993 notice had triggered the 180 day period, this period would expire on April 12, 1994. On April 6, 1994, Greenwood's counsel moved to have the trial scheduled for June 6, 1994, a date which is clearly outside of this period. The defendant was present, but did not object. Such failure to object constitutes acquiescence. *Williams v. State,* 533 N.E.2d 1193 (Ind. 1989); *Pethtel,* 427 N.E.2d at 895; *Scrivener,* 441 N.E.2d at 956.

In *Williams,* five days prior to the expiration of the 180 day period, in the presence of the other codefendants, one codefendant moved for a continuance in order to obtain discovery. The continuance was granted until nine days after expiration of the period. Failure to object to this continuance was found to constitute waiver. *Williams,* 533 N.E.2d at 1194. In *Pethtel,* the 180 day period commenced on or around July 9, 1979. On December 10, approximately four weeks prior to the 180 day time limit, the trial court, with Pethtel and his attorney present, set a trial date for March 11, 1980. Although this date was clearly outside the 180 day period, Pethtel failed to object until February 6, 1980, about a month after the expiration of the period. *Pethtel,* 427 N.E.2d at 893. The relevant facts of *Scrivener* are similar. The 180 day period commenced on October 3, 1980, resulting in an April 1, 1981 expiration date. On February 24, 1981, the trial date was set for April 30, 1981, twenty-nine days after the expiration of the 180 day period. After several continuances, Scrivener finally moved to dismiss on June 15, 1991. *Scrivener,* 441 N.E.2d at 956. These cases held that failure to object, either at the time when the trial date was set or before the expiration of the 180 day period, precluded dismissal under the IAD's speedy trial provisions.

In the present case, defendant argues that the trial date was set just moments after counsel was appointed and before counsel knew of the speedy trial time period, and thus waiver was in no way voluntary. *See Webb v. State,* 437 N.E.2d 1330 (Ind.1982). This reasoning is flawed in several ways. First, Greenwood was present when the trial date was set, yet he sat idly by. Second, Greenwood's counsel had almost a week to find out about the 180 day period and object before its expiration. As we have explained in *Scrivener* and *Pethtel,* such a timely objection would have enabled the state to bring the defendant to trial within the statutory time period. Greenwood cannot argue that the six days remaining was insufficient time; his subsequent attorney filed the motion to dismiss five days after Greenwood acquired him as counsel.

Thus, had Greenwood's October 14 notice been sufficient, his failure to object to a trial date outside of the 180 day period would have constituted waiver.

### III. Double Jeopardy

Greenwood was not brought to trial. Instead, the trial court dismissed the charges with prejudice, and ordered Greenwood to be returned to Illinois. Greenwood argues that even if the state were correct on the above issues, the IAD "anti-shuffling" provision precludes further prosecution. The IAD reads in relevant part:

> If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing with prejudice.

I.C. § 35–33–10–4, Art. 3(d). Since Greenwood was returned to Illinois prior to trial, he argues that this statute protects him from subsequent prosecution. The state disagrees, arguing that double jeopardy is no bar to subsequent prosecution in this case, since defendant was discharged prior to trial. I.C. §§ 35–38–4–4.[3]

▪▪▪ Thus, we are faced with a conflict between two statutes which deal with the effect of dismissal on subsequent prosecution. One statute is general, pertaining to the dismissal in any criminal case, while the other statute is specific to detainers. A general rule of statutory construction states that when faced with an irreconcilable conflict, the specific statute will prevail over the more general one. *Sanders v. State*, 466 N.E.2d 424 (Ind.1984). Furthermore, penal statutes are to be strictly construed against the State. *Cook v. State*, 547 N.E.2d 1118 (Ind.Ct.App. 1989), *trans. denied.* Since the IAD offers this defendant greater protection, both of these rules of statutory construction lead to the conclusion that we must apply the IAD in deciding this case. The issue becomes whether the IAD actually protects Greenwood from subsequent prosecution.

▪▪▪ The IAD was adopted in order to encourage the expeditious and orderly disposition of outstanding charges against a prisoner. Such outstanding charges otherwise would "obstruct prisoner treatment and rehabilitation." IAD Art. 1. The agreement is to "be liberally construed so as to effectuate its purposes," IAD Art. 9(1), and compliance with the provisions of the IAD is mandatory. *United States v. Mauro*, 436 U.S. 340, 361–63, 98 S.Ct. 1834, 1847–49, 56 L.Ed.2d 329 (1978).

Because the IAD "protects a prisoner's interest in uninterrupted participation in rehabilitation programs in the original place of imprisonment," *Webb*, 437 N.E.2d at 1330, the statute requires dismissal with prejudice if the prisoner is returned to the first state prior to trial. IAD Art. 3(d), 4(e). Although the language of the IAD indicates that dismissal is warranted in a case such as this, only a few decisions actually have based holdings on this part of the statute. In most of these cases, the defendant was returned to the first state for reasons apart from the proceedings in the second state. Those warranting dismissal include: *Bunting v. Maryland*, 80 Md.App. 444, 564 A.2d 109 (1989) (holding that return of prisoner to first state after pre-trial motions but before trial required dismissal); *Florida v. Wiggins*, 425 So.2d 621 (Fla.App.1983), *rev. denied* (holding that when defendant was brought into a state to answer charges in one county and later returned to the first state, charges in second county must be dismissed with prejudice); *Michigan v. Beamon*, 83 Mich.App. 121, 268 N.W.2d 310 (1978) (holding that return of prisoner to first state pending retrial after a mistrial is violative of anti-shuffling provision). One case even held that the defendant was entitled to dismissal when the defendant was returned to the first state after trial but prior to sentencing. *Walker v. King*, 448 F.Supp. 580 (S.D.N.Y.1978) (*contra, United States v. Coffman*, 714 F.Supp. 478 (D.Kan.1989), *aff'd*, 905 F.2d 330 (10th

---

**3.** I.C. § 35–38–4–4 reads in relevant part: "[I]f an appeal is taken by the state from an order or judgment by which the defendant is discharged before trial, the order or judgment does not constitute a bar to further prosecution of the defendant." I.C. § 35–41–4–3 adds: "A prosecution is barred if ... the former prosecution was terminated after the jury was impaneled and sworn, or in a trial by the court without a jury, after the first witness was sworn...." In this case, a jury had not been empaneled nor had the first witness been sworn.

Cir.1990) (opposite result from *Walker v. King*)).

Those cases which do not dismiss the charges are factually more remote from the present case. They include *Illinois v. Dye,* 69 Ill.2d 298, 13 Ill.Dec. 695, 371 N.E.2d 630 (1977) (holding that dismissal is not required for federal facility to state facility transfers, when defendant remained in federal custody); and *State ex rel. Fetters v. Hott,* 173 W.Va. 502, 318 S.E.2d 446 (1984) (allowing temporary return of the prisoner to the first state in order for him to attend a probation hearing). Also, a number of cases have held that the anti-shuffling provision is not a fundamental right and is subject to waiver. *E.g., Webb,* 437 N.E.2d at 1330 (holding that a defendant who voluntarily returns to the first state waives his anti-shuffling claim); and *Maryland v. Torres,* 86 Md.App. 560, 587 A.2d 582 (1991) (holding that failure to raise anti-shuffling issue prior to second post conviction appeal constitutes waiver of the issue). There is no evidence of waiver in the present case.

We are aware of only one prior case which involves return of prisoner to the first state due to an erroneous dismissal. *Florida v. Moser,* 445 So.2d 696 (Fla.App.1984).[4] In that case, defendant moved for dismissal due to noncompliance with the speedy trial provisions of the IAD. The trial court granted defendant's motion and returned him to Maryland. The state appealed, and the Florida court of appeals held that return of the defendant to Maryland required dismissal of the charges against him. The court did not reach the merits of the speedy trial claim, finding that issue to be moot in light of the anti-shuffling provisions of the IAD. *Id.*

Although we are not bound by the decisions from other jurisdictions, all are from jurisdictions which are party states to the IAD. Since uniform application is necessary to achieve the purposes of the statute, *Reed v. Farley,* 512 U.S. 339, ——, 114 S.Ct. 2291, 2297, 129 L.Ed.2d 277 (1994), and because the plain language of the statute compels dismissal in this case, we agree with the

interpretation of our sister states. Although the erroneous discharge would not bar subsequent prosecution under our double jeopardy statute, the return of Greenwood to Illinois after the erroneous discharge does bar subsequent prosecution under § 3(d) of the IAD.

### Conclusion

While the trial court was in error in dismissing the charges, subsequent events mandate the same result. Therefore, the judgment is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON, and SULLIVAN, JJ., concur.

---

**4.** *Moser* involved IAD § 4(e) rather than § 3(e). However, the relevant language in these two sections is virtually identical.