**STATE of Indiana, Appellant–Plaintiff,**

v.

**Dana A. THOMPSON, Appellee Defendant.**

No. 02A03–9705–CR–149.

Court of Appeals of Indiana.

Nov. 5, 1997.

Jeffrey A. Modisett, Attorney General, Katherine L. Modesitt, Deputy Attorney General, Indianapolis, for Appellant–Plaintiff.

Nicole T.T. Jaubert, Deputy Public Defender, Fort Wayne, for Appellee–Defendant.

**OPINION**

GARRARD, Judge.

On February 3, 1995, the State filed a Verified Petition for Revocation of Probation against Dana Thompson ("Thompson"). The trial court, on January 8, 1997, *sua sponte* dismissed the State's petition for revocation of probation based on the State's untimely request to have the defendant returned from Minnesota. The State appeals, arguing that the trial court erred in dismissing the petition. We reverse.

### FACTS AND PROCEDURAL HISTORY

Thompson was convicted and sentenced in Allen Superior Court on August 19, 1993, for possession of cocaine, a class D felony. The trial court sentenced him to three years in the Department of Correction with six months executed and two and one-half (2½) years suspended under terms and conditions of probation beginning on August 19, 1993.

On February 3, 1995, the Allen County Probation Department filed a Verified Petition for Revocation of Probation against Thompson, alleging that he did not maintain good behavior based on his February 2, 1995 arrest by the Drug Enforcement Agency in Minneapolis, Minnesota for conspiracy to possess cocaine with intent to distribute. After reviewing the petition, the trial court issued a warrant for Thompson on February 7, 1995. The attorney representing Thompson on his charges pending in Minnesota sent a letter to the Allen County Prosecutor on May 24, 1995, which stated, in part:

> I represent Dana Thompson regarding federal criminal charges pending in the United States District Court for the District of Minnesota. It is my understanding that the State of Indiana has placed a detainer on Mr. Thompson.
>
> I demand that a speedy trial be held on the detainer or that it be dismissed. Mr.

Thompson has been held in custody since January, 1995.

The trial court received notice of Thompson's request on June 1, 1995. On March 11, 1996, the trial court set a hearing on the status of the revocation for April 12, 1996. The State filed a "Petition for Writ of Habeas Corpus Ad Prosequendum" on March 13, 1996, which the trial court granted on March 21, 1996.

On January 3, 1997, a second hearing on the status of the revocation was set for February 14, 1997. The trial court subsequently ordered the Allen County Sheriff to transport Thompson from Minnesota. However, the next day, on January 8, 1997, the trial court dismissed the State's petition to revoke probation and vacated its transport order. The trial court stated, in part:

> Defendant is currently incarcerated in a federal institution and currently has a detainer against him in this matter for an alleged violation of probation. On May 24, 1995, defendant's attorney requested a speedy trial on that detainer. On March 13, 1996, the Prosecuting Attorney of Allen County sought to have the defendant returned to this jurisdiction for prosecution. That request is untimely, therefore the pending Petition for Violation of Probation is dismissed and the Transport Order of January 7, 1997, is vacated and set aside.

Record at 12. The State timely filed this appeal.

### ISSUE

The sole issue presented by the State on appeal is whether the trial court erred in dismissing the petition for revocation of probation based on an untimely request by the State to have Thompson returned from Minnesota.

### DISCUSSION AND DECISION

 Both the State and Thompson indicate that the Interstate Agreement on Detainers ("IAD"), found at Indiana Code § 35-33-10-4, governs the speedy trial rights of a defendant incarcerated in another jurisdiction. *Brown v. State*, 497 N.E.2d 1049 (Ind. 1986). The IAD is a compact among 48 states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States. *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985). The purpose of the IAD is to "'encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints.'" *Id.* at 720, 105 S.Ct. at 3403 (quoting Article I, Interstate Agreement on Detainers).

The State argues that the trial court erred in dismissing the petition for probation revocation for three reasons: 1) the IAD does not apply to detainers based on probation violation charges; 2) the IAD applies only to persons who have been convicted and are serving time in another state based on that conviction, not persons who are imprisoned awaiting trial; and 3) Thompson failed to follow the specific procedure set forth in the IAD. Although we find merit in all three of the State's contentions,[1] we reverse the trial

---

1. We utilize the State's first basis to reverse the trial court's dismissal with the belief that our holding will provide greater guidance to practitioners. However, we find support for the State's alternative bases for reversal.

 In Thompson's letter to the Allen County Prosecutor "demanding" a speedy trial on his detainer, Thompson's attorney indicated that the federal charges for which Thompson was being held in Minnesota were *pending*. In *Daher v. State*, 572 N.E.2d 1304 (Ind.Ct.App.1991), *trans. denied*, we held that the IAD "applies only to defendants who have been convicted and are serving sentences in the sending state, it does not apply to defendants who are imprisoned awaiting trial." *Id.* at 1306. *See also Pallett v. State*, 269 Ind. 396, 381 N.E.2d 452, 455 (Ind.1978) (The

 detainer act "applies to persons who are already convicted and serving time in prison...."). 

 Pursuant to Indiana Code § 35-33-10-4(b), "an inmate must do more than deliver notice in order to commence the 180 day period." *State v. Greenwood*, 665 N.E.2d 579, 581 (Ind.1996). Notice must be made pursuant to the provisions of the IAD, and Article 3(b) "requires the defendant to deliver notice to custodial officials so that they can forward the notice and appropriate certifications to the prosecuting authorities." *Id.* "These procedures are not mere technicalities and we have long required strict compliance. Validation of information from the official having custody is important to prosecuting officials in the receiving state." *Id.* (citation omitted). Although Thompson argues that it was "impossible" for him to provide the requisite information,

court's dismissal because the IAD does not apply to detainers which are based on probation violation allegations.

The State, citing *Carchman v. Nash,* 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985), maintains that the United States Supreme Court has held that Article III of the IAD does not apply to detainers based on probation violation charges. Thompson concedes that *Carchman* supports the proposition that a "probation-violation charge, which does not accuse an individual with having committed a criminal offense in the sense of initiating prosecution, does not come within Article III." Appellee Brief at 7. However, he attempts to distinguish *Carchman* by countering that it "affirmed that IAD [A]rticle III applies to documents charging an individual with having committed a criminal offense." *Id.* We disagree with Thompson's distinction and find the State's interpretation to be accurate.

In *Carchman,* the defendant was convicted and sentenced in the Superior Court of New Jersey, Mercer County, for breaking and entering with intent to rape and assault with intent to rape. During the term of his probation for the New Jersey offenses, he was arrested in Pennsylvania and charged with felony offenses occurring in Pennsylvania. While awaiting trial on the Pennsylvania charges, the Mercer County (New Jersey) Probation Department notified the Superior Court that the defendant had violated his probation by committing offenses in Pennsylvania. Subsequently, the Superior Court issued a bench warrant for his arrest, which was lodged as a detainer with the appropriate correction officials in Pennsylvania.

After being convicted for the Pennsylvania offenses, the defendant requested final disposition of his New Jersey probation violation charge. The State of New Jersey failed to bring respondent "to trial" on the probation violation charge within 180 days after Article III was invoked. *Id.* at 722, 105 S.Ct. at 3404–05. The New Jersey Superior Court denied defendant's motion to dismiss the probation violation charged, ruled that the Penn-

sylvania convictions constituted a probation violation, and ordered that his previously suspended time be revoked. Subsequently, the trial court's revocation was vacated and the defendant was ordered released from state custody. The State ultimately appealed to the United States Supreme Court which granted certiorari.

In addressing the issue of whether Article III of the IAD applied to detainers based on probation violation charges, the Supreme Court began by considering the language of the agreement. The Court stated:

> The most natural interpretation of the words "indictment," "information," and "complaint" is that they refer to documents charging an individual with having committed a criminal offense. [Citation omitted]. This interpretation is reinforced by the adjective "untried," which would seem to refer to matters that can be brought to full trial.

*Id.* at 724, 105 S.Ct. at 3405. The Court also noted, emphasizing the words "prosecution" and "brought to trial," that the language of Article V of the IAD further supported its conclusion that the language in Article III referred to *criminal charges* pending against a prisoner. *Id.* at 724–25, 105 S.Ct. at 3405. The Court held:

> The language of the Agreement therefore makes clear that the phrase "untried indictment, information or complaint" in Art. III refers to criminal charges pending against a prisoner. A probation-violation charge, which does not accuse an individual with having committed a criminal offense *in the sense of initiating a prosecution,* thus does not come within the terms of Art. III. *Although the probation-violation charge might be based on the commission of a criminal offense, it does not result in the probationer's being "prosecuted" or "brought to trial" for that offense.* Indeed, in the context of the Agreement, the probation-violation charge generally will be based on the criminal offense for which the probationer already was tried and convict-

Appellee's Brief at 7, this is due to the fact that he had not yet been convicted in Minnesota, a

fact which supports the State's argument above.

ed and is serving his sentence in the sentencing State.

*Id.* at 725, 105 S.Ct. at 3406 (emphasis added). Additionally, the Court identified policy concerns supporting its interpretation of the IAD:

Adoption of the Agreement was motivated in part by a practice of filing detainers based on untried criminal charges that held little basis. These detainers often would be withdrawn shortly before the prisoner was released. Even though unsubstantiated, the detainers would have a detrimental effect on the prisoner's treatment. . . .

A probation-violation detainer, however, generally, as in the present case, will be based on the prisoner's commission of the crimes that resulted in his conviction and incarceration in the sending State. Because the convictions conclusively establish the probation violation, the probation-violation charge will not be unsubstantiated. Thus, the abuses that in part motivated adoption of the Agreement generally do not occur in the context of probation-violation detainers.

*Id.* at 729–731, 105 S.Ct. at 3409. (citation omitted) (footnotes omitted).[2]

██ Given that the IAD is a "congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is federal law subject to federal construction," *Carchman,* supra, at 719, 105 S.Ct. at 3403, we are persuaded by the State's position. Uniform application of the IAD is necessary to achieve the purposes of the statute. *State v. Greenwood,* 665

N.E.2d 579, 584 (Ind.1996). We find, consistent with *Carchman,* that the language of the Interstate Agreement on Detainers, codified at Indiana Code § 35–33–10–4, which is applicable to detainers based on "any untried indictment, information or complaint," does not include a detainer based on a probation-violation charge.

██ In an effort to offer additional grounds for upholding the trial court's dismissal, Thompson maintains that the petition for revocation failed to state a cause sufficient to lead to revocation of probation. He contends that the revocation of a suspended sentence or probation based solely on the commission of another crime must be preceded by a criminal conviction. Appellee's Brief at 11. This is not the state of the law. "The trial court may revoke probation for the mere commission of a criminal offense during the probationary period which the State has properly established by a preponderance of the evidence." *Wilburn v. State,* 671 N.E.2d 143, 147 (Ind.Ct.App.1996), *trans. denied.* "A defendant's probation may be revoked even where the State has not convicted defendant of the additional crime by establishing his guilt beyond a reasonable doubt, or by entering defendant's plea of guilty. It is only necessary that the trial court find by a preponderance of the evidence that the defendant committed an additional offense." *Boyd v. State,* 481 N.E.2d 1124, 1126 (Ind.Ct. App.1985).

██ An erroneous discharge under the IAD does not bar subsequent prosecution under our double jeopardy statute. *State v.*

2. The Court also stated:

[I]n general the factual issue of guilt of the probation violation is conclusively established by the convictions leading to incarceration in the sending State. Disposition of the probation-violation charge underlying a detainer therefore often will result in probation being revoked and in the probationer's being resentenced to imprisonment in the receiving State. [Citations omitted]. The ultimate consequence is that the detainer based on the probation-violation charge merely will be replaced by a detainer based on the reimposed sentence, with similar adverse effects on the prisoner's treatment and rehabilitation. . . . Moreover, because the prisoner may not relitigate the factual issue of guilt of the probation-violation

charge when it is established by a conviction in the sending State, [citation omitted], the "most serious," see *Barker v. Wingo,* 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972), of the interests of the accused in obtaining a speedy disposition of outstanding criminal charges—the interest in " 'limit[ing] the possibilities that long delay will impair [his] ability . . . to defend himself,' " *Smith v. Hooey,* 393 U.S. 374, 378, 89 S.Ct. 575, 577, 21 L.Ed.2d 607 (1969), quoting *United States v. Ewell,* 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966)—is unlikely to be strongly implicated in the probation-violation detainer context.

*Carchman,* 473 U.S. at 732–733, 105 S.Ct. at 3409–3410.

*Greenwood,* 665 N.E.2d 579, 583–84 (Ind. 1996). Likewise, because Thompson was never transported from Minnesota, the "anti-shuffling" provision found in Article III of the IAD does not preclude further prosecution. *Id.;* IND.CODE § 35–33–10–4, Art. 3(d). Therefore, we reverse and remand to the trial court for further proceedings consistent with this opinion.

STATON and NAJAM, JJ., concur.