**Douglas L. NEWCOMB, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 30A01–0104–CR–139.

Court of Appeals of Indiana.

Nov. 14, 2001.

Stephen Gerald Gray, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Martha Warren–Rosenfeld, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

KIRSCH, Judge.

After a bench trial, Douglas L. Newcomb was convicted of operating a vehicle with a blood alcohol content (BAC) of at

least .10%,[1] a Class C misdemeanor. He now appeals, mounting a multi-faceted attack on the admission of the blood test results.[2] We address sua sponte one dispositive issue: whether the evidence was sufficient to sustain Newcomb's conviction.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On May 9, 2000, Hancock County Sheriff's Deputy Brad Burkhard initiated a traffic stop of a vehicle driven by Newcomb. As Deputy Burkhard approached the car, he smelled a strong odor of alcohol on Newcomb's breath. He also noticed that Newcomb's speech was slurred and that his eyes were glassy and bloodshot.

Newcomb was transported to Hancock Memorial Hospital, where a laboratory employee drew blood for a BAC test. The test results showed that Newcomb's serum BAC was 147 milligrams per deciliter.

Newcomb was charged with operating a motor vehicle while intoxicated and operating a vehicle with a BAC of .10% or more. During Newcomb's trial, the State presented the testimony of Barbara Spaugh, a medical technologist at the Hancock Memorial Hospital lab, who testified about Newcomb's test results.[3] The trial court

---

1. *See* IC 9–30–5–1.

2. Newcomb argues that the trial court erred in admitting the report containing the results of his BAC test. He contends that the results were hearsay, and that the State failed to authenticate the results, provide a sufficient foundation, or establish a sufficient chain of custody. In doing so, he notes that the report states the date of the trial, rather than the date of Newcomb's arrest. The State fails to address this discrepancy, and we observe that although the BAC test was run on May 9, 2000, the actual report admitted at trial was generated on the morning of trial. This circumstance highlights an area of concern to this court regarding the reliability of computer-generated reports where the data have been electronically stored prior to use at trial. One commentator has observed that the replacement of "traditional leatherbound shop books" with computer data has undermined the efficacy of some rules of evidence, including the business records exception to the hearsay rule. He notes that the inference of trustworthiness "makes sense" with physical shopbooks "because the opposing party is thought to have a reasonable opportunity to uncover errors and deletions." Rudolph J. Peritz, *Computer Data and Reliability: A Call for Authentication of Business Records Under the Federal Rules of Evidence*, 80 Nw. U.L.Rev. 956 (1986). That same author notes,

> Unlike ledgers and books of payables and receivables with individual items, intermediate accounts, and scrivened entries or changes, computer printouts are not records at all, but rather neatly packaged concatenations of information excerpted from numerous records in multiple files. Because program changes or data manipulations can be accomplished without leaving any trace and without affecting the day-to-day operation of a computer system, both unintentional error and intentional fraud are difficult to discover behind a perfect-looking printout.

*Id.* at 960. Other commentators have noted the evidentiary problems inherent in stored data. *See* Robin Greenwald, *An Environmental Prosecutor's Caution About Electronic Transmissions of Environmental Reports*, 13 No. 8 NAAG Nat'l Envtl Enforcement J. 3 (1998) ("Determination of chain of custody rests on the common sense resolution of two questions: (1) Whether the item offered into evidence is the original item collected, or (2) whether the item's attributes have substantially changed such that its current representation does not reasonably reflect the attributes it had at the time it was created.")

In light of this reality, we note that trial courts, in their discretion, may wish to inquire into the chain of custody prior to the generation of the data and the integrity of the electronically-stored data up to the generation of the physical document sought to be admitted at trial.

3. Spaugh testified about the report results in terms of "decaliters." However, the report used the abbreviation for deciliter, and because her testimony relied on the report, we infer that she misspoke in using that term.

found Newcomb guilty of the BAC offense. He now appeals.

## DISCUSSION AND DECISION

■ When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Weaver v. State*, 702 N.E.2d 750, 752–53 (Ind.Ct.App.1998). We look solely to the evidence most favorable to the verdict together with all reasonable inferences to be drawn therefrom. *Id.* We will affirm if the probative evidence and reasonable inferences to be drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

IC 9–30–5–1, the statute under which Newcomb was convicted, provides: "A person who operates a vehicle with an alcohol concentration equivalent to at least ten-hundredths (0.10) gram of alcohol but less than fifteen-hundredths (0.15) gram of alcohol per: (1) one hundred (100) milliliters of the person's blood; or (2) two hundred ten (210) liters of the person's breath; commits a Class C misdemeanor."

Here, the State's evidence regarding Newcomb's BAC consisted of the report of Newcomb's blood alcohol test and Spaugh's testimony, both of which were expressed in terms of Newcomb's blood serum alcohol level. However, the alcohol content of whole blood is not the same as the alcohol content of either the plasma or serum portion of the blood. *Melton v. State*, 597 N.E.2d 359, 360–61 (Ind.Ct.App. 1992), *trans. denied.* Blood plasma, obtained by centrifuging the blood, is whole blood minus the cells, while blood serum is whole blood with the clotting elements removed. *Id.* (citing E. FITZGERALD & D.

See *Bogetti v. State*, 723 N.E.2d 876, 880 (Ind.Ct.App.2000) (noting confusion between

HUME, INTOXICATION TEST EVIDENCE—CRIMINAL AND CIVIL § 4:12–14 (1987)).

We have addressed this issue a number of times. In *Melton*, 597 N.E.2d at 360–61, we reversed a defendant's conviction for operating a vehicle with a BAC level in excess of .10%. In that case, the medical technologist who administered the defendant's blood test testified that his blood plasma sample contained .167 milligrams of alcohol per deciliter. However, he did not indicate the defendant's BAC by weight. Based on the language of the statute, we held that only evidence of the amount of alcohol by weight in the person's whole blood can support a conviction of IC 9–30–5–1. Because the State failed to produce any evidence that would allow the factfinder to convert the result of the defendant's plasma test into an amount of alcohol by weight in his whole blood, we held that there was a failure of proof as to one element of the crime charged, namely, the weight of the alcohol in the defendant's blood. *Id.*

By contrast, in *Shuman v. State*, 489 N.E.2d 126, 129–30 (Ind.Ct.App.1986), *trans. denied*, the evidence as to the defendant's alcohol level was expressed in the test results as a serum alcohol content rather than a BAC. However, in that case, in addition to the test results the State introduced expert witness testimony concerning conversion of the serum alcohol level to BAC. According to the range of conversion figures offered by the expert witness, the BAC corresponding to the .16 percent serum level would be .138 percent to .128 percent. Because any figures within the BAC range would therefore be above the .10 percent level, we found this evidence sufficient. *Id.*

terms).

Similarly, in *Hayes v. State*, 514 N.E.2d 332, 335–36 (Ind.Ct.App.1987), *trans. denied*, a toxicologist who tested the defendant's blood sample stated that the serum alcohol level in the sample was 0.288 percent and that the serum alcohol level is approximately twelve percent higher than the blood alcohol level. Accordingly, she calculated that defendant's blood alcohol level was 0.254 percent. We found this evidence sufficient to sustain the defendant's conviction. *Id.*

■ In this case, the test revealed that the alcohol content of Newcomb's blood serum was 147 milligrams per deciliter. However, as in *Melton*, the State failed to present sufficient evidence of the BAC of Newcomb's whole blood, as ·required by statute. Spaugh, the technical coordinator with responsibility for the chemistry and blood bank departments in the hospital, testified that Newcomb's blood alcohol report stated the results in terms of serum blood alcohol levels, which "according to literature" can be fifteen to twenty percent higher than the whole blood level. *Transcript* at 50. However, she also admitted that her fifteen to twenty percent figure was based on "speculations and assumptions," *Transcript* at 53–54, and stated that the tests run on Newcomb were "not definitive in terms of amounts." *Id.* at 54.

Unlike in *Hayes* and *Shuman*, the State presented no expert testimony here converting the blood serum figures to whole BAC. The State elicited no testimony from Spaugh, other than her title, regarding her training, credentials, or expertise. Although she offered the fifteen to twenty percent differential based on "the literature," there was no evidence establishing that Spaugh was an expert qualified to render such an opinion, nor did Spaugh explain to which literature her testimony referred. Because the State failed to present testimony establishing Spaugh as

an expert qualified to testify regarding Newcomb's BAC based on the results of a serum blood test, there was a failure of proof on this element, and the evidence is insufficient to sustain Newcomb's conviction for driving with a BAC in excess of .10%.

Reversed.

BAILEY and BROOK, JJ., concur.