William O. RIVERS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0202–CR–116.

Court of Appeals of Indiana.

Oct. 22, 2002.

Victoria Ursulskis, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

After a bench trial, William O. Rivers was convicted of robbery[1] as a Class A felony. He now appeals, raising the following issues for review:

I. Whether he is entitled to discharge because the State failed to bring him to trial within one year as required by Ind. Criminal Rule 4(C) and failed to provide him with a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution where he was tried three years and seven months after the charges against him were brought.

II. Whether there was sufficient evidence to support his conviction.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On May 17, 1998, an officer with the Indianapolis Police Department found eighty-four-year-old Roberta Higginson's body in her Indianapolis home. Through the course of an investigation of her death, officers learned that Rivers may have been involved.

On May 26, 1998, Rivers gave police a statement in which he told officers that he and Rene Majors were high on drugs when Majors suggested that they go to Higginson's home to obtain some money. After the pair visited with Higginson for some time, Majors rose and approached Higginson as though she were going to embrace

---

1. *See* IC 35–42–5–1.

her. Instead, she picked up a light-colored object and began beating the elderly woman with it. Majors then directed Rivers to the area of the house where Higginson kept guns and money. When Rivers returned with a gun and money, he saw Majors beating the woman with a cane. Majors also found a gun in Higginson's home. Rivers told Majors they needed to leave, and they did. The pair sold the guns. Higginson died from her injuries.

On May 27, 1998, Rivers was charged with murder, felony murder, and robbery. He testified against Majors at her murder trial after receiving use immunity for his testimony. After multiple continuances, on December 12, 2001, he was tried at a bench trial on stipulated evidence consisting of his statement to the police and the trial exhibits from Majors' trial. The court convicted Rivers of robbery, but acquitted him on the murder and felony murder charges and sentenced him to twenty years' imprisonment. He now appeals.

### DISCUSSION AND DECISION

 Rivers first contends that he should have been discharged because the State failed to bring him to trial within one year. Crim. R. 4(C) provides:

"No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivi-

sion (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time. Any defendant so held shall, on motion, be discharged."

Importantly for our purposes, subsection (F) of that same rule also provides in part that "[w]hen a continuance is had on motion of the defendant, or delay in trial is caused by his act, any time limitation contained in this rule shall be extended by the amount of the resulting period of such delay caused thereby."

 The State's duty to try the defendant within one year is an affirmative duty, and the defendant is under no obligation to remind the State of its duty. *Marshall v. State*, 759 N.E.2d 665, 668 (Ind.Ct.App.2001). Whether a particular delay in bringing a defendant to trial violates the speedy trial guarantee is determined by the specific circumstances of the case. *Id.* The purpose of Crim. R. 4 is to ensure early trials, not to allow defendants to manipulate the means designed for their protection and permit them to escape trials. *McKay v. State*, 714 N.E.2d 1182, 1190 (Ind.Ct.App.1999).

 Generally, a defendant is responsible for any delay caused by his action including seeking or acquiescing in any continuance. *Vermillion v. State*, 719 N.E.2d 1201, 1204 (Ind.1999); *Marshall*, 759 N.E.2d at 669; *State v. Love*, 576 N.E.2d 623, 626 (Ind.Ct.App.1991), *trans. denied.* Moreover, when a trial court, acting within the one-year period of the rule, schedules trial to begin beyond the one-year limit, the defendant must make a

timely objection to the trial date or waive his right to a speedy trial. *Vermillion,* 719 N.E.2d at 1204; *Marshall,* 759 N.E.2d at 668.

Here, the trial court acted within the one-year period to set Rivers' trial outside the one-year period on June 28, 1999. Rivers did not object to the setting of the trial. Rivers' failure to object waived his right to a trial within the one-year period of Crim. R. 4(C) and constituted acquiescence to the later trial date.

In *State v. McGuire,* 754 N.E.2d 639, 642 (Ind.Ct.App.2001), *trans. denied,* the defendant asked for a continuance so that the parties could engage in plea negotiations. Because the trial court granted the continuance but did not set a date for trial, we concluded that the trial court granted the defendant an indefinite continuance. We held that "once the defendant has requested an indefinite delay he must take some affirmative action to notify the trial court that he is dissatisfied with the delay and desires to go to trial in order to recommence the running of the Crim.R. 4(C) period." *Id. See also State v. Isaacs,* 757 N.E.2d 166, 168 (Ind.Ct.App.2001), *trans. denied* (2002) (when defendant requests indefinite continuance then becomes dissatisfied with progress of his case, he must take affirmative action to restart running of the Crim. R. 4(C) period).

■ Here, Rivers requested that he be tried after Majors. The trial court granted this request for a continuance, but did not schedule a trial date at that time. Therefore, we conclude that Rivers requested and received an indefinite continuance of his trial. Accordingly, it was incumbent upon him to notify the trial court when he was no longer satisfied with the delay in the proceeding and that he desired to go to trial to re-start the running of the Crim. R. 4(C) time period. *Id.* Subsequent to the completion of Majors'

trial, Rivers first notified the trial court that he wished to proceed to trial on March 20, 2001 when he filed his motion for discharge. Even after that point, he moved for two continuances that amounted to 119 days. Assuming arguendo that the remaining time accrued against the Crim. R. 4(C) time period, Rivers was tried within 148 days of asserting his desire for a speedy trial.

■ A defendant may not take affirmative steps that are inconsistent with being brought to trial within one year, then complain that his or her speedy trial rights were violated. *See State v. Suggs,* 755 N.E.2d 1099, 1103 (Ind.Ct.App.2001). In this case, we will not discharge on speedy trial grounds a defendant who acquiesces in a trial outside the one-year period, specifically requests an indefinite continuance so that his co-defendant may be tried, then makes at least fourteen express requests for continuances, and by his actions in pursuing an interlocutory appeal delays the trial even further. A review of the record demonstrates that of the entire three and one-half year period, all but 323 days passed under an express request from Rivers or his co-defendant for a continuance. Furthermore, some of the remaining 323 days are attributable to Rivers. Under these circumstances, we hold that Rivers is not entitled to discharge under Crim. R. 4(C). *See also Webb v. State,* 437 N.E.2d 1330, 1333 (Ind.1982) (finding no speedy trial deprivation where record replete with defense continuances "strongly indicated" that defendant did not desire a speedy trial).

■ Rivers claims that his constitutional right to a speedy trial was violated. In reviewing claims of speedy trial right violations, Indiana and federal courts apply the analysis established in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d

101 (1972). *Sweeney v. State*, 704 N.E.2d 86, 102 (Ind.1998), *cert. denied*, 527 U.S. 1035, 119 S.Ct. 2393, 144 L.Ed.2d 793 (1999). The *Barker* analysis employs four factors: (1) the length of the delay, (2) the defendant's assertion of his or her right, (3) the government's reason for the delay, and (4) the prejudice to the defendant. *Id.; Eguia v. State*, 468 N.E.2d 559, 564–65 (Ind.Ct.App.1984).

■■■ The length of the delay is to some extent a triggering mechanism. *Lockert v. State*, 711 N.E.2d 88, 91 (Ind.Ct.App.1999). Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. *Id.* A post-accusation delay exceeding one year has been termed "presumptively prejudicial" to a defendant and triggers the *Barker* analysis. *Vermillion*, 719 N.E.2d at 1206 (citing *Doggett v. United States*, 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 2691 n. 1, 120 L.Ed.2d 520, 528 n. 1 (1992)); *Danks v. State*, 733 N.E.2d 474, 481 (Ind.Ct.App.2000), *trans. denied. See, e.g., Sauerheber v. State*, 698 N.E.2d 796, 805 (Ind.1998) (delay from arrest to trial of one year triggered analysis); *Lahr v. State*, 615 N.E.2d 150, 152 (Ind.Ct.App. 1993) (eighteen-month delay triggered analysis).

In *Eguia*, 468 N.E.2d at 564–65, we applied the *Barker* analysis to a defendant's claim that he had been denied his constitutional right to a speedy trial. In that case, the delay between the defendant's arrest and his trial was more than three years, a sufficient amount of delay to trigger an inquiry. However, we noted that the defendant's tardiness in asserting his right demonstrated that he had no desire to have a speedy trial. The defendant filed an indefinite continuance, then waited nineteen months before making any indication that he should have been tried sooner. He also moved for continuances on two occasions when a trial date had been set. Based on these facts, we concluded that the defendant took little action to assert his right. *Id.*

We next examined the reason for the delay. We noted that the record demonstrated that much of the delay was attributable to the defendant rather than any action or inaction on the State's part. Finally, we concluded that the defendant failed to show he suffered any prejudice from the delay. We rejected the defendant's proposition that prejudice should be presumed because the defendant was notified of the charges soon after his arrest. Ultimately, we concluded that the defendant's constitutional right to a speedy trial was not violated. *Id.* at 565.

Here, the length of the delay between accusation and trial was three and one-half years. This delay is sufficiently lengthy to trigger the *Barker* analysis. However, an examination of the factors demonstrates that Rivers' speedy trial rights were not violated. The vast majority of the delay was directly attributable to Rivers' affirmative acts in seeking continuances, requesting a trial after his co-defendant, and pursuing an interlocutory appeal. Moreover, Rivers failed to assert his speedy trial right until nearly three years after the charges were first filed. This course of action demonstrates that Rivers was not dissatisfied with the course of his trial. In that time, he agreed to testify against his co-defendant and engaged in plea negotiations. His delay of nearly three years in asserting his speedy trial right weighs against a speedy trial violation.

■■■ Rivers also fails to demonstrate how he was prejudiced by the delay in this case. Although his plea negotiations were ultimately unsuccessful, the delay in Rivers' trial is in part attributable to his efforts to avoid one. Moreover, Rivers changed counsel numerous times. Several

of the continuances he requested were to enable new counsel sufficient time to review the case. Finally, we also note that Rivers had confessed to his participation in the crime. We find that Rivers has failed to demonstrate prejudice. We therefore conclude that Rivers' constitutional right to a speedy trial was not violated, and the trial court did not err in denying his motion for discharge.

█ Rivers also maintains that there is insufficient evidence to support his conviction. Specifically, he contends that the trial court acquitted him of the murder charges because it found insufficient evidence of an agreement between Majors and Rivers to commit those acts. Rivers maintains that the same logic applies to the robbery charge and that his conviction for that charge may not stand.

When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Luna v. State,* 758 N.E.2d 515, 517 (Ind. 2001); *Newcomb v. State,* 758 N.E.2d 69, 71 (Ind.Ct.App.2001). We look solely to the evidence most favorable to the verdict together with all reasonable inferences to be drawn therefrom. *Luna,* 758 N.E.2d at 517; *Newcomb,* 758 N.E.2d at 71. We will affirm if the probative evidence and reasonable inferences to be drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Luna,* 758 N.E.2d at 517; *Newcomb,* 758 N.E.2d at 71.

IC 35–42–5–1(1) provides that a person who knowingly or intentionally takes property from another person or from the presence of another person by using or threatening the use of force on any person commits robbery, a Class C felony. However, the offense is a Class A felony if it results in serious bodily injury to any person other than a defendant. Rivers contends that there was insufficient evidence of force because he did not know before he and Majors went to Higginson's home that Majors intended to beat Higginson to death.

█ An individual who aids another person in committing a crime is as guilty as the actual perpetrator. *Boyd v. State,* 766 N.E.2d 396, 399 (Ind.Ct.App.2002). Rivers watched as Majors picked up a light-colored object like an ashtray and beat the elderly Higginson until she slumped over in her chair. Because he was "in it now," *Trial Exhibits,* Exhibit 42 at 6, Rivers went to the area of the house where Majors said Higginson kept her money and guns and retrieved a gun. When he returned, he watched as Majors hit Higginson with a cane five or six times. At some point, Rivers also found a strongbox, and Majors found other property. The pair then fled through the back door. Regardless of whether Rivers knew of Majors' intentions before the pair entered Higginson's home, once Majors began beating Higginson, her intent to use force to accomplish the taking of Higginson's property became clear. At that point, Rivers searched the home and located valuable property, witnessed Majors' further beating of Higginson, then left the house with the property, leaving Higginson to die. The evidence is sufficient to sustain Rivers' conviction for robbery.

Affirmed.

BROOK, C.J., and DARDEN, J., concur.