## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 10 2020, 10:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth Flynn
Braje, Nelson & Janes, LLP
Michigan City, Indiana

ATTORNEY FOR APPELLEE

Tyler G. Banks
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kersee Anderson,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

June 10, 2020

Court of Appeals Case No.
19A-CR-202

Appeal from the LaPorte Circuit
Court

The Honorable Thomas J.
Alevizos, Judge

Trial Court Cause Nos.
46C01-1610-MR-6
46C01-1005-FA-106

**Shepard, Senior Judge.**

[1] A jury determined Kersee Anderson fatally shot Wade Hatcher. Anderson appeals his convictions of murder, a felony,[1] and possession of a firearm by a serious violent felon, a Level 4 felony.[2] He also appeals the revocation of his probation in a separate case. We affirm.

[2] On October 1, 2016, Anderson, a probationer, was involved in a confrontation with members of the Cooper family, including Terrance Cooper (Cooper), at a hospital. Anderson later bragged on Facebook that he had hit Cooper, and he was ready to go to "war" against the Cooper family. Tr. Vol. III, p. 12. Over the next few weeks, Anderson posted on Facebook that he was still angry at the Cooper family, and he asked a friend to help him find a gun.

[3] On the evening of October 15, Cooper was driving in Michigan City. His friend Wade Hatcher sat in the front passenger seat. At the same time, Anderson was riding in Arriss Duke's car with siblings Britney Shell (Britney) and Brente Shell (Brente). Anderson sat behind the driver, Duke. All the windows were rolled down.

[4] Anderson saw Cooper, and Duke followed him. As Duke drove along the right side of Cooper's car, Anderson produced a handgun and shot at Cooper several

---

[1] Ind. Code § 35-42-1-1 (2014).

[2] Ind. Code § 35-47-4-5 (2016).

times.[3]  One shot struck Hatcher in the head.  Cooper drove back to his house. Hatcher was subsequently taken to a hospital, where he was pronounced dead.

[5]  On October 17, the State charged Anderson with murder and unlawful possession of a firearm by a serious violent felon.  The trial court presided over a jury trial beginning on March 28, 2018.  That trial ended after the jury failed to reach a unanimous verdict.

[6]  The court conducted a second jury trial in November 2018.  In a bifurcated proceeding, the jury first determined Anderson was guilty of murder.  After receiving additional evidence, the jury found Anderson guilty of the firearm charge.

[7]  Meanwhile, the State had filed a notice of probation violation.  On December 26, 2018, the trial court presided over a sentencing hearing and a probation dispositional hearing.  The court imposed a sentence for the convictions and further determined Anderson had violated the terms of his probation, ordering him to serve his previously-suspended sentence.

[8]  Anderson raises the following restated issues:

> I.  Did the trial court err in denying his motion for discharge?

---

[3] During a subsequent police interrogation, Anderson denied firing a handgun at Cooper or Hatcher, but he admitted that Brente had given him a handgun as they rode in Duke's car.

II.     Did the trial court err in admitting evidence?

# I. Motion for Discharge – Criminal Rule 4(C)

Anderson argues the trial court should have discharged him because the State failed to timely try him. Indiana Criminal Rule 4(C) provides, in relevant part:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar . . . . Any defendant so held shall, on motion, be discharged.

It is the State's duty to bring a defendant to trial within one year of being charged or arrested. *Blair v. State*, 877 N.E.2d 1225 (Ind. Ct. App. 2007), *trans. denied*. But the purpose of Criminal Rule 4 is to ensure early trials, not to allow defendants to manipulate the means designed for their protection and permit them to escape trials. *Rivers v. State*, 777 N.E.2d 51 (Ind. Ct. App. 2002), *trans. denied*. When a defendant seeks or acquiesces in a delay of trial, the one-year time limit is extended by the length of the delay. *Mefford v. State*, 51 N.E.3d 327 (Ind. Ct. App. 2016). On review of a Criminal Rule 4 claim, we examine factual findings for clear error and consider questions of law de novo. *Id.*

The State charged Anderson on October 17, 2016, and did not bring him to trial for the first time until March 26, 2018. Anderson does not dispute that the trial

court had previously extended the trial date to January 16, 2018, outside the one-year deadline, and he concedes he did not object to that date.

[12] Anderson's Rule 4(C) claim instead focuses on a January 9, 2018 pretrial hearing. Prior to the hearing, Anderson had filed a motion to continue the January 16 trial, claiming the State had belatedly provided voluminous discovery materials.

[13] At the January 9 hearing, the trial court decided to extend the trial date rather than strike the State's belated exhibits. Next, the State calculated how many days it believed were left in the one-year period. Anderson's counsel explained that one of his partners had attended prior hearings, but he had no reason to doubt the State's calculations. Anderson further stated "[w]hat I would probably do is object just for the sake of the record . . . . But based on the calculation, based on everything I do know, I think their calculation is correct." Supp. Tr. Vol. II, p. 38. Counsel further indicated Anderson might be eligible "for release on own recognizance," *id.*, but did not object based on Rule 4(C).

[14] Next, the court suggested March 26 as a trial date. Anderson's counsel said he was available that day. The court also offered earlier dates in March, but Anderson's counsel stated March 26 was the only date that worked for his schedule. As a result, the court scheduled the trial to begin on March 26, with the delay "attributable to the State." Appellant's App. Vol. II, p. 90.

[15] On January 17, 2018, the State filed a Motion to Set Trial Date Within Criminal Rule 4 Constraint, stating that it believed the March 26 trial date was

beyond the Rule 4(C) deadline. The court denied the State's request to move up the trial date, noting "the Defendant has not made motion for dismissal," *id.* at 93, and Anderson further selected March 26 as the beginning trial date. In any event, the court further advised, "[i]f either party disagrees with these conclusions and findings, such party should file an objection to the same . . . on January 25, 2018." *Id.* at 96. Anderson did not timely file an objection, waiting until March 13, 2018 to move for discharge.

[16] We conclude Anderson acquiesced to the delay leading to the March 26 trial date both by failing to object at the January 9 hearing on grounds of Rule 4(C) and by agreeing to the March 26 date. In addition, he later failed to timely file a written objection to the trial court's Rule 4(C) analysis. The trial court did not err in denying Anderson's motion for discharge. *See Dean v. State*, 901 N.E.2d 648 (Ind. Ct. App. 2009) (no error in denying motion for discharge; trial court set a trial date outside the one-year period, but Dean failed to object), *trans. denied*.

## II. Admission of Evidence

[17] Anderson challenges the trial court's decision to admit into evidence at retrial a transcript of Brente's testimony from the first trial and a photograph of ammunition that was found at the home of Anderson's girlfriend, where Anderson sometimes stayed. The trial court has inherent discretionary power over the admission of evidence, and its evidentiary decisions are reviewed only for an abuse of discretion. *Jones v. State*, 780 N.E.2d 373 (Ind. 2002). An abuse

occurs when a decision is clearly against the logic and effects of the facts and circumstances before the court. *Cox v. State*, 774 N.E.2d 1025 (Ind. Ct. App. 2002).

## *1. Brente's Prior Trial Testimony*

[18] Brente testified at Anderson's first trial. Brente did not appear at Anderson's retrial, and the court permitted the State to read his prior trial testimony into the record. Anderson argues the State did not sufficiently demonstrate that it was unable to locate Brente.

[19] A hearsay statement is a statement "not made by the declarant while testifying at the trial or hearing; and . . . is offered in evidence to prove the truth of the matter asserted." Ind. Evid. R. 801(c). In general, hearsay evidence is inadmissible. Ind. Evid. R. 802. There is an exception for former testimony by an unavailable witness if the testimony:

> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

> (B) is now offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Ind. Evid. R. 804(b)(1).

[20] Before a witness' prior recorded testimony may be admitted in lieu of live testimony, the prosecution must show the witness is unavailable. *Berkman v.*

*State*, 976 N.E.2d 68, 75 (Ind. Ct. App. 2012), *trans. denied*. A witness is unavailable if the witness "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure . . . the declarant's attendance[.]" Ind. Evid. R. 804(a)(5)(A). A witness' refusal to testify renders the witness unavailable for purposes of using that person's prior testimony. *Guy v. State*, 755 N.E.2d 248 (Ind. Ct. App. 2001), *trans. denied*.

[21] In Anderson's case, during retrial the prosecutor asked permission to read Brente's prior trial testimony into the record due to his absence. Detective Havlin of the Michigan City Police Department testified that the prosecutor's office had attempted to serve a subpoena on Brente at the last Michigan City address they had for him, and it was returned indicating that he no longer lived there. In addition, the detective searched numerous databases and asked Britney where her brother could be found, but he was unable to locate a new address. Detective Havlin called Brente at the last phone number he had on file but did not reach him. Britney indicated Brente was living with his girlfriend but did not know the girlfriend's last name. Next, the prosecutor told the trial court that she had spoken with Brente by telephone, but he refused to tell her his address or where he worked, much less testify, citing fears for his safety.

[22] Under these circumstances, we conclude the State made a reasonable, good-faith effort to locate Brente and demonstrated that he was unavailable to testify at retrial. *See Tiller v. State*, 896 N.E.2d 537 (Ind. Ct. App. 2008) (trial court did not err in determining State's witness was unavailable; witness had told a

prosecutor he would not testify because he was afraid, a detective tried but failed to locate the witness, and the witness's girlfriend did not know his location).

[23] Even if the trial court had abused its discretion in admitting Brente's prior trial testimony, any error was harmless. Errors in the admission or exclusion of evidence are to be disregarded as harmless unless they affect the substantial rights of a party. *Swingley v. State*, 739 N.E.2d 132 (Ind. 2000).

[24] Here, setting aside Brente's testimony, other evidence amply demonstrated that Anderson committed the offenses and violated the terms of his probation. There is no dispute that Hatcher was fatally shot on October 15, 2016, as he rode in Cooper's car. In the days before the shooting, Anderson expressed animus toward Cooper on social media and asked for help in finding a gun.

[25] Next, security camera footage from various Michigan City businesses and testimony by Britney, Duke, and Cooper demonstrated that on October 15, Anderson was riding in Duke's car when Duke encountered Cooper. Britney heard Anderson curse at Cooper and Hatcher, and then, according to Britney and Cooper, Anderson shot at Cooper. Duke did not see Anderson shoot, but he heard gunshots coming from behind him, where Anderson was sitting.

[26] Cooper unequivocally identified Anderson as the shooter, subsequently identifying him in a photographic lineup. In addition, an officer found a fired bullet casing in the back seat of Duke's car. Finally, during police questioning Anderson admitted that Brente had given him a handgun while they were in

Duke's car. This is ample evidence from which the jury could have convicted Anderson of murder and possession of a firearm by a serious violent felon, even if Brente's evidence had been admitted in error.[4]

### 2. State's Exhibit 14: Photograph of Ammunition

Anderson argues the trial court erred during the murder phase of retrial by admitting into evidence a photograph of ammunition the police found at his girlfriend's home. He claims the photograph was irrelevant and unduly prejudicial.

"Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Ind. Evid. Rule 401. In general, relevant evidence is admissible unless the evidence otherwise violates a constitutional provision, a statute, or the Indiana Rules of Evidence. Ind. Evid. Rule 402. Indiana Evidence Rule 403 provides that relevant evidence may be excluded at trial if its "probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" A trial court's discretion is wide on issues of relevance and unfair prejudice. *Snow v. State*, 77 N.E.3d 173 (Ind. 2017).

---

[4] In his reply brief, Anderson argues for the first time that reading Brente's prior trial testimony into the record violated his right to cross-examine witnesses under the federal and state constitutions. A reply brief may not present new theories of appeal. *Ward v. State*, 567 N.E.2d 85 (Ind. 1991). In any event, a denial of the right of confrontation is harmless error where the evidence supporting the conviction is so convincing that a jury could not have found otherwise. *Jackson v. State*, 735 N.E.2d 1146 (Ind. 2000). The evidence set forth above meets this standard.

[29]   At trial, the State bore the burden of proving Anderson shot Hatcher. The murder weapon, a handgun, was never located. Anderson claims State's Exhibit 14, a photograph of a bag of ammunition that was found in a bedroom where Anderson had stayed with his girlfriend, was irrelevant because it was not 9 millimeter ammunition, while Hatcher was killed by a 9 millimeter round.

[30]   We disagree for two reasons. First, the trial court did not admit State's Exhibit 14 until after Anderson's recorded police interview was admitted into evidence. During the interview, Anderson told the police he did not own a gun. The photograph of the ammunition, which was found in the bedroom where Anderson was staying with his girlfriend, makes it more probable that he did own a firearm and calls Anderson's credibility into question.

[31]   Second, during retrial Anderson raised the possibility that another type of ammunition had been used in the shooting. In his opening statement, Hatcher told the jury:

> One thing I just want to make sure that we're clear on and what the evidence will be, [the State's ballistics expert] will come in and testify, but [the expert] will not tell you that the bullet fragments that were found in Wade Hatcher came from a .9 millimeter. He will not tell you that because he's a scientist and he can't tell you that because it was a bullet fragment. It cannot be microscopically examined to determine what bullet it was. But what he will tell you is that it has the same class characteristics as the .38 caliber family. We have a lot of gun owners. You may be familiar with guns. But he will tell you that a .9 millimeter is within that .38 caliber family, but there are other calibers, other weapons, that are also in that .38 caliber

family; and he will also tell you that the .38 caliber family is one of the largest families of bullets with respect to the weapons.

Tr. Vol. II, p. 30. As a result, the ammunition depicted in State's Exhibit 14 was relevant because Anderson raised the possibility of a different caliber of ammunition being used in the killing.

[32] Turning to the question of unfair prejudice, the Indiana Supreme Court has noted that while the mere possession of a firearm is generally not illegal, evidence of a firearm "can be unfairly prejudicial," especially when it suggests another uncharged crime. *Snow*, 77 N.E.3d at 179. In this case, the issue is ammunition, not a firearm. In any event, during the murder phase of the trial, the parties did not present any evidence that Anderson was forbidden from possessing a handgun. There was no suggestion of another crime, charged or uncharged, besides murder during that phase. We conclude the prejudicial effect of State's Exhibit 14 was not so unfair as to outweigh its probative value. The trial court did not abuse its discretion in admitting the photograph. *See Fuentes v. State*, 10 N.E.3d 68 (Ind. Ct. App. 2014) (no undue prejudice in admitting photograph of rifle found in Fuentes' car, even though he was alleged to have committed offense with a different gun; possession of a firearm is generally not an offense), *trans. denied*.

## Conclusion

[33] For the reasons state above, we affirm the judgment of the trial court.

[34] Affirmed.

Bradford, C.J., and Pyle, J., concur.