Allen WARD, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 3–881A205.

Court of Appeals of Indiana,
Third District.

May 27, 1982.

Wendell W. Goad, Merrillville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

This is an appeal by the defendant, Allen Ward, from a conviction for theft, a Class D felony, and from the trial court's failure to dismiss that indictment.

The facts relevant to our decision are that on October 2, 1978, Ward was arrested and charged with theft. However, Ward was subsequently incarcerated in the Metropolitan Correctional Center (MCC) in Chicago, Illinois. On November 14, 1978 the Superior Court of Lake County, Indiana issued a detainer for Ward in order to try him on the charges of October 2, 1978.

On April 26, 1979 Ward sent a letter to the prosecuting attorney of Lake County, Indiana stating his term and place of confinement and requesting that pending charges be speedily dealt with pursuant to the Interstate Agreement on Detainers Act (IAD). IC 35–2.1–2–4. This letter was also given to his case manager at the MCC. Subsequently Ward was transferred to the Federal Correctional Institution (FCI) in Lexington, Ky. Having received no response to his April 26, 1979 letter, Ward contacted the warden at the FCI through a case manager pursuant to the requirements of the IAD, art. 3(b). The warden then made the appropriate request and provided the required information to the Lake County officials on August 6, 1980. This resulted in the beginning of a trial on January 12, 1981.

Ward moved for dismissal asserting the state had failed to bring him to trial within 180 days after his April 26, 1979 letter. This motion was denied. As a result of the evidence, Ward requested that the jury be instructed on criminal conversion as a lesser included offense of theft. This request was also denied. On February 4, 1981 a jury found Ward guilty of a Class D felony, theft, and he was sentenced to a term of two years to run consecutively with the term he was currently serving.

Ward raises three issues on appeal:

1. Whether the trial court erred in not dismissing the charge because of a failure to bring the defendant to trial within 180

days after notice under the IAD, IC 35–2.1–2–4.

2. Whether the trial court erred by not giving the defendant's tendered instruction on criminal conversion as a lesser included offense of theft.

3. Whether the evidence was sufficient to support a conviction.

Due to our resolution of the first issue, there is no need to address the second and third issues.

Ward argues that his letter dated April 26, 1979 to the District Attorney's Office of Lake County was sufficient compliance with the terms of IC 35–2.1–2–4 to make effective his request for a speedy trial and to trigger the running of the 180 day time limit. He also argues that when he sent that letter while incarcerated at the MCC in Chicago, his case manager there had notice of the letter, which was placed in his file at the MCC, and that notice was sufficient to fulfill the requirement of IC 35–2.1–3–4, art. 3(b) that the request be sent to "the warden, commissioner of correction or other official having custody." Ward argues that art. 9 of the IAD, which calls for a liberal construction of the agreement to effectuate its purposes, provides the authority to give effect to his efforts as substantial compliance.

Art. 3(b) of the IAD specifically sets forth the procedure for causing written notice of a request for final disposition to be delivered to the appropriate officials.[1] Keeping in mind the dual function of the IAD to afford a procedure for obtaining custody of defendants confined in other states and to protect the defendants' constitutional right to a speedy trial, West AIC 35–2.1–2–4 (Indiana Criminal Law Study Commission Comments at 494), we do not find these procedural requirements to be merely technicalities. In fact, they serve an important function. Since local prosecuting officials make important decisions based on the information required to be forwarded to the official and the court, that information needs validation which a direct letter from a defendant does not present. This furthers the IAD's purpose to afford prosecutors custody of defendants incarcerated out of state.

■■■ Second, and more importantly, the custodial official needs notice of any request for a final determination since a detainer becomes void if the defendant is not tried within 180 days after an appropriate request is made. IC 35–2.1–2–4, art. 5(c). This is for the defendant's benefit as it protects his right to a speedy trial. Additionally, the detainer system often works a harshness in that a prisoner with other criminal charges pending against him may find the duration of his existing imprisonment increased or that he thereby faces harsher conditions of confinement. *Smith v. Hooey* (1969), 89 S.Ct. 575, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607. Notice to the custodial official is important so that these negative effects are as limited as possible. Therefore, even when the statute is liberally construed so as to effectuate its purposes, we find that the procedural method outlined is essential, and that Ward's attempt to directly notify the prosecuting officials personally was insufficient to begin the 180 day time limit.

■■■ However, Ward further argues that he did comply with the statutory requirement to notify the proper custodial official while incarcerated at the MCC. Ward testified that his only communication link to the prison administration was through his case manager, who was responsible for all matters relating to his case, including detainers under the interstate agreement. He further testified that he notified his case manager and gave him a copy of his request for a speedy trial. Finally he testified that after being transferred, when he made his second request which resulted in the trial he

---

1. "(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of correction or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested." West's AIC 34–2.1–2–4

now challenges, it was only necessary to make his request to a case manager and that throughout the process he did not speak to the warden. This testimony was uncontroverted by the state.

We find the following discussion of the IAD in *U.S. v. Hutchins* (N.D.Ind.1980), 489 F.Supp. 710, a case involving a situation analogous to the one before us:

> "According to Article III(a) of the Agreement, the requirement that a defendant be brought to trial on certain charges within 180 days is triggered when the following four factors are present: (1) the defendant has entered upon a term of imprisonment in a penal or correctional institution of a party State, (2) during the continuance of that term of imprisonment the charges in question are pending against the defendant in another party State, (3) a detainer based on such charges has been lodged against the defendant, and (4) the defendant has caused written notice and request for final disposition of the charges to be delivered to the appropriate prosecuting authorities and court."

489 F.Supp. at 713.

> "It is clear from Article III(b) that a prisoner, having been notified of a detainer lodged against him, need only give his local custodian written notice of the place of his incarceration and written request for final disposition of the charges underlying the detainer. It is then incumbent upon the custodian to attach a certificate described in Article III(a) and to forward all these papers to the appropriate prosecuting authorities and court.... Contrary to the Government's argument, therefore, the intended procedure under the Agreement does not require the prisoner to cause actual delivery of his notice and request to the appropriate prosecutor and court."

489 F.Supp. at 716.

Given this discussion it would be hypertechnical to hold that Ward's request was not a suitable written notice and request as called for by art. 3(b) of the IAD merely because it was not addressed to the warden.

Such a construction would fly in the face of the IAD's mandate that its terms be liberally construed so as to give effect to its purposes. We also find little merit in the argument that a case manager is not an official having custody in light of the holding of *U.S. v. Hutchins, supra,* that where a deputy U.S. marshal, a non-custodial official, provided a defendant with notice of a detainer and the opportunity to request a speedy trial, he had stepped into the jail commander's shoes. That court concluded:

> "The Government should not be heard to claim that the mistakes of its agents so easily void a defendant's statutory rights."

489 F.Supp. at 717.

Here there can be no question but that Ward intended to invoke his right to a speedy trial provided by the IAD. He caused to be delivered to the prosecuting officer notice of his place of confinement and his request for a final disposition of the indictment. More importantly, he gave that notice and request to his case manager at the MCC. It was then incumbent upon the custodial officials to fulfill their obligations under art. 3(b) of the IAD to send the required information to the appropriate prosecuting authorities and court. Since Ward had given the custodial official notice of his request, the failure of the prison officials to comply with the mandate of the act cannot be attributed to Ward to extinguish his right to a speedy trial and defeat a purpose of the IAD.

We therefore reverse and remand to the trial court with instructions to set aside the conviction and grant the motion to dismiss.

Reversed.

HOFFMAN, P. J., and STATON, J., concur.