In the

# United States Court of Appeals
### For the Seventh Circuit

No. 07-1899

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RANDALL BREWINGTON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 05 CR 142—**Larry J. McKinney**, *Judge.*

ARGUED DECEMBER 11, 2007—DECIDED JANUARY 18, 2008

Before POSNER, WOOD, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* In early 2006, while serving a state prison sentence in Indiana, Randall Brewington received word that he had been indicted on criminal charges in federal court. The notice he received was in a detainer filed against him by the United States Marshal. Upon its filing, Brewington tried to assert his rights under the Interstate Agreement on Detainers (IAD), which would have required that he be brought to trial within 180 days of the receipt of his demand by the "prosecuting officer" and the "appropriate court." The "prosecuting officer," here the office of the United States Attorney for the Southern District of Indiana, received Brewington's demand, but for reasons not apparent in

the record, the "appropriate court," the United States District Court for the Southern District of Indiana, never did. When Brewington was brought to court more than 180 days after the U.S. Attorney received his demand, he moved to dismiss the indictment, claiming a violation of his rights under the IAD. Because the district court had not received Brewington's demand, his motion was denied. After losing out on his motion, Brewington entered a guilty plea to a charge of possession of a firearm by a felon but reserved his right to challenge on appeal the denial of his motion to dismiss. Brewington now appeals from the order denying his motion.

Brewington, a felon, was arrested in January 2005 on a state probation violation. At the time of his arrest, he was in possession of a firearm and ammunition. As a result, his probation was revoked, and he was returned to state custody with a release date set some time in 2009. In September 2005, Brewington was indicted in federal court on separate counts of possession by a felon of a firearm and ammunition. *See* 18 U.S.C. § 922(g)(1). He was informed of the indictment on February 24, 2006, when state prison officials gave him a standard-form detainer issued by the United States Marshal. On the form, Brewington exercised his right under the IAD to demand a speedy trial, and his demand was received by the U.S. Attorney's office on March 7, 2006. It is undisputed, however, that the district court never received a copy of the demand. The record does not reveal why it was not received, but Brewington suggests, without supporting evidence, that it was the fault of Indiana prison officials who sent the demand only to the U.S. Attorney.

About 7 months after receiving Brewington's demand, the U.S. Attorney procured a writ of habeas corpus *ad prosequendum* and brought Brewington in for an initial appearance in federal court. The appearance took place

on October 13, 2006, and Brewington moved for dismissal of the indictment because 220 days had passed since the U.S. Attorney received his IAD demand for a speedy trial. In denying the motion, the district court concluded that the 180-day clock did not start running until *both* the court and the prosecutor received Brewington's demand, and, because that didn't happen here, no time had expired.

In relevant part, the IAD requires that a prisoner be brought to trial "within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint." 18 U.S.C. App. 2, § 2, art. III(a). Interpretation of this provision begins (and in this case ends) with the Supreme Court's opinion in *Fex v. Michigan*, 507 U.S. 43 (1993), where the Court held that the 180-day clock "does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." *Id.* at 52. Prison authorities are charged with sending the demand to the prosecutor and the court, but the prisoner bears responsibility for ensuring that his jailors follow through. *See id.* at 49. Indeed, the form that Brewington signed contains language acknowledging his understanding of this aspect of the IAD: "I further understand . . . that I must periodically inquire as to whether my written notice of request for a final disposition of the charges against me has been received by the appropriate U.S. Attorney and the appropriate U.S. District Court."

Brewington apparently recognizes that the quoted language from *Fex* dooms his argument, but even though that language follows the words "[w]e hold that," he contends that it is only dicta. He cites two cases decided

before *Fex* for the proposition that a diligent prisoner should not lose out on the benefits of the IAD simply because prison authorities have failed to fulfill their duties under the agreement. *See United States v. Reed*, 910 F.2d 621, 625-26 (9th Cir. 1990); *United States v. Hutchins*, 489 F. Supp. 710, 715-16 (N.D. Ind. 1980). But the Supreme Court rejected this argument in *Fex* when it held that, even if delivery of the notice is delayed due to negligence or malice on the part of prison authorities, the IAD's clock does not start running until the notice is actually received by both the prosecutor and the court. *Fex*, 507 U.S. at 49-50. The Ninth Circuit has explicitly recognized that *Fex* defrocked *Reed*. *United States v. Johnson*, 196 F.3d 1000, 1002 (9th Cir. 1999).

Brewington also notes the IAD's command that it be liberally construed, 18 U.S.C. App. 2, § 2, art. IX, but he does not explain how this command can overcome Supreme Court precedent. As we have previously held, "[t]he IAD, and the interpretation set forth in *Fex*, is literal: the executed detainer is 'to be delivered to the prosecuting officer and the appropriate court.'" *Jones*, 454 F.3d at 649 (quoting 18 U.S.C. App. 2, § 2, art. III(a)).

Finally, Brewington argues that requiring the delivery of the demand to the court serves no purpose and that providing notice only to the prosecutor should be enough to start the running of the IAD clock. True, this might be a good argument for rewriting the IAD, but it is beside the point because the IAD, as it presently reads, doesn't allow for that possibility. *See Fex*, 507 U.S. at 52 ("Petitioner's 'fairness' and 'higher purpose' arguments are, in other words, more appropriately addressed to the legislatures of the contracting States, which adopted the IAD's text.").

It should also be noted that even if the IAD's 180-day clock had expired, the district court might not have dismissed Brewington's indictment with prejudice as he

requested. When the United States is the receiving state, as it is here, the district court has discretion to remedy an IAD violation by dismissal with or without prejudice. 18 U.S.C. App. 2, § 9(1). Here, the seriousness of the charge and the lack of evidence of bad faith by the government might very well have moved the court to only enter a dismissal order without prejudice. *Cf. United States v. Kelley*, 402 F.3d 39, 41-42 (1st Cir. 2005) (affirming dismissal without prejudice for IAD violation because seriousness of offense and lack of bad faith by government outweighed possible prejudice to defendant); *United States v. McKinney*, 395 F.3d 837, 841-42 (8th Cir. 2005) (affirming dismissal without prejudice for IAD violation based on seriousness of offense, lack of bad faith by government, and lack of prejudice to defendant).

In closing, we note that counsel for the government, when asked during oral argument why Brewington's demand provoked no response, was unable to supply a clear answer. Perhaps, he said, it was because the responsibility for acting upon IAD demands is not vested in one person within his office but instead is "diffused." And therein, we think, lies the problem. Although the government comes out of this case with a "win," it's a tarnished one. Its handling of Brewington's demand under the IAD is nothing to be proud of.

For these reasons, we AFFIRM the judgment of the district court.

A true Copy:

      Teste:

                                 _____

                          *Clerk of the United States Court of Appeals for the Seventh Circuit*