**Dale BOWLING, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 68A05–0906–CR–306.

Court of Appeals of Indiana.

Dec. 30, 2009.

Dale W. Arnett, Winchester, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Dale Bowling brings this interlocutory appeal of the trial court's order that denied his motion to dismiss the criminal charge pending against him.

We affirm.

### ISSUE

Whether the trial court erred in not dismissing the charge pursuant to the Interstate Agreement on Detainers Act ("IAD").

### FACTS

On November 22, 2007, Bowling was arrested and incarcerated in the Randolph County jail. He was released on bond the next day.

On December 6, 2007, Bowling signed a letter addressed to the Randolph County Superior Court stating that he was currently incarcerated at a specific facility in Ohio, and asked for information relative to the charge of cocaine possession currently pending against him in Randolph County. The letter was returned to Bowling with a notation from the Randolph County Clerk indicating that there was no current case.

On December 31, 2007, the State charged Bowling with having possessed cocaine, a class D felony, on November 22, 2007. On January 2, 2008, the Randolph County Superior Court ("the trial court") found probable cause for the charge and set an initial hearing for January 23, 2008.

On January 7, 2008, "Becky with the London [Ohio] Correctional Facility contacts [the trial court] and advises that [Bowling] is presently incarcerated with an outdate of 8/08." (App.8). The trial court's file reflects this contact and information, but no written notice in that regard.

On January 10, 2008, the trial court received from Bowling a motion seeking a fast and speedy trial pursuant to a specific provision of Ohio code. The motion stated that he was currently incarcerated at the London facility and scheduled for release on August 17, 2008. The trial court provided the prosecutor with a copy of Bowling's motion, and on January 23, 2008, the trial court reset the initial hearing for March 5, 2008—noting Bowling's incarceration in London, Ohio.

On March 5, 2008, Bowling failed to appear for the initial hearing, and a warrant was issued for his re-arrest. On July 21, 2008, Bowling filed with the trial court his "Motion to Dismiss Action for State's Non–Compliance to R.C. § 2941.401 Speedy Trial Statute," citing his January 10, 2008 motion. (App.60). No action was taken on his motion. On August 15, 2008, Bowling was returned to the Randolph County Sheriff, who served the re-arrest warrant on him, and Bowling's initial hearing was held.[1]

On August 25, 2008, counsel for Bowling filed a motion to dismiss. The motion asserted that on January 29, 2008, while incarcerated at London, Bowling had executed IAD paperwork asking to be brought to trial on the cocaine possession charge within 180 days; that this "paperwork" had been "mailed to the Randolph Prosecutor's Office," and that Bowling "should have been brought to trial within

1. On September 2, 2008, Bowling was again released on bond.

180 days after delivering the correct paperwork to" the prosecutor's office. (App.53).

On September 2, 2008, the trial court held a hearing on Bowling's motion. Bowling testified that on January 31, 2008, he "filled out paperwork" given to him by officials at London to pursue a "fast and speedy trial" on the cocaine possession charge; and, thereafter, "they g[a]ve [him] a copy" of "the paperwork"—which Bowling identified as Exhibit A. (Tr. 10, 8, 10, 11). The trial court admitted into evidence Exhibit A, which consists of documents that reflect the following:

A January 29, 2008 detainer[2] was placed on Bowling with Ohio's Correction Department by the trial court, and indicated Bowling's incarceration at London and expected release date of August 17, 2008.

A January 31, 2008, letter to the prosecuting attorney signed by Bowling and witnessed by an official at London (a woman named Rebecca, for the records office supervisor) stating that Bowling requested early disposition—specifically, within 180 days—of the charges pending against him in the trial court, and enclosing forms as follows:

Form I, Notice of Untried Indictment, Information of Complaint and Right to Request Disposition, stating *inter alia* that notice of a request for early trial must be sent to the appropriate prosecuting officer *and* the appropriate court;

Form II, Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints, which is addressed to the prosecuting attorney *and* the trial court;

Form III, Certificate of Inmate Status, specifying Bowling's commitment offense, time served, and expected release date; and

Form IV, Interstate Agreement on Detainers, offering to deliver temporary custody and signed on behalf of the warden and by Bowling.

A copy of Bowling's pro se notice to the trial court dated December 6, 2007.

Also admitted into evidence was Exhibit B, a postal service receipt to the London facility acknowledging delivery of an article of certified mail to the office of the Randolph County prosecuting attorney on February 4, 2008, signed for by "Annette Randall." (Ex. B). Bowling asserted that Exhibit B evidenced the prosecutor's office's receipt of all the documents contained in Exhibit A. The State responded that although Randall was an employee of the prosecutor's office, it had no knowledge of what was contained in the delivery evidenced by the receipt.

On January 30, 2009, the trial court issued its order denying Bowling's motion to dismiss. The trial court found that the prosecutor's office had no record of receiving an IAD early trial request from Bowling, and had been unable to find any such request. It further found that "no copy of [Bowling]'s IAD early trial request was ever received by the Randolph Superior Court or the Clerk of the Randolph Superior Court, either by certified mail or otherwise." (App.70). The trial court found that despite evidence of Bowling's efforts to submit a "proper IAD request for early trial," there was "no evidence that he ever requested or checked to verify that the

---

**2.** A "detainer" is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent. *Fex v. Michigan*, 507 U.S. 43, 45, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993).

IAD request had been served on both the Prosecuting Attorney and the Court." (App.71). Further, "there ha[d] not been compliance with the statutory requirement that notice be delivered to the prosecuting officer *and the appropriate court.*" (App.75) (emphasis in original). This requirement, the trial court found, "serves as notice to the court and presents a dual tracking system to insure that both entities receive timely notice and are in a position to timely process the request," and was "not a mere technicality but ... a procedural method which is essential." *Id.*

### DECISION

Whether the trial court correctly ruled on a motion to dismiss under the IAD is a question of law and reviewed de novo. *State v. Robinson,* 863 N.E.2d 894, 896 (Ind.Ct.App.2007), *trans. denied.* The trial court's findings underlying its ruling are reviewed pursuant to a clearly erroneous standard. *Id.*

The IAD is an agreement among most of the United States that provides for the return of prisoners so that pending charges from another jurisdiction can be resolved. *State v. Smith,* 882 N.E.2d 739, 742 (Ind.Ct.App.2008) (citing Ind.Code § 35–33–10–4). Pursuant to the IAD, a defendant must be brought to trial "within 180 days" after he has

> [c]aused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information of complaint.

*Id.* (quoting I.C. § 35–33–10–4, Art. 3(a)). This request for early trial must be "accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held" and various other information. *Id.* The notice procedures of the IAD "are not mere technicalities." *State v. Greenwood,* 665 N.E.2d 579, 582 (Ind.1996).

Bowling argues that pursuant to *Ward v. State,* 435 N.E.2d 578 (Ind.Ct.App.1982), his motion to dismiss should have been granted. Specifically, he argues that like Ward, he "did everything in his power to comply with" the IAD; therefore, "the prison's failure to comply with" the IAD "should not be held against him," and the charge against him "should be dismissed because more than" 180 days had elapsed since he "filed out the required paperwork." Bowling's Br. at 5, 6. We are not persuaded.

In *Ward,* the defendant originally wrote a letter (from his place of incarceration in Illinois) to the prosecuting attorney in Lake County, "stating his term and place of confinement and requesting that pending charges be speedily dealt with pursuant to the" IAD. 435 N.E.2d at 579. He then gave this letter "to his case manager" at the Illinois facility. *Id.* Ward testified that "his only communication link to the prison administration was through his case manager, who was responsible for all matters relating to his case, including detainers under the interstate agreement." *Id.* Apparently, his case manager did not take further action to pursue the IAD process on Ward's behalf for an early trial. Relying on *U.S. v. Hutchins,* 489 F.Supp. 710 (N.D.Ind.1980), we found that after Ward "gave that notice and request to his case manager," it was then "incumbent upon the custodial officials to fulfill their obligations under" the IAD "to send the required information to the appropriate prosecuting authorities and court." *Id.* We concluded that because "Ward had given the custodial official notice of his request, the failure of the prison officials to comply with the mandate" of the IAD

could not "be attributed to Ward to extinguish his right to a speedy trial and defeat a purpose of the IAD." *Id.* Accordingly, we held that Ward's motion to dismiss should have been granted.

Apparently, no transfer was sought in *Ward.* Further, subsequent to *Ward,* the United States Supreme Court decided *Fex v. Michigan,* 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993). *Fex* concerned the meaning of the phrase "caused to be delivered" in the IAD, *id.* at 47, 113 S.Ct. 1085, a provision found in the Indiana statute at Indiana Code section 35–33–10–4, whereby a person against whom a charge is pending in another jurisdiction and subject to a detainer,

> shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made. . . .

*Fex* considered the argument that the IAD notice should be considered delivered upon the "prisoner's transmittal of an IAD request to the prison authorities," and expressly "reject[ed]" this contention. 507 U.S. at 48, 47, 113 S.Ct. 1085. *Fex* reiterated that "the IAD unquestionably requires delivery," and concluded with the holding that the 180–day time period

> does not commence until the prisoner's request for final disposition of the

charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him.

507 U.S. at 52, 113 S.Ct. 1085.

We read *Fex* as bringing clarification to our earlier *Ward* opinion.[3] Further, as the State notes, *U.S. v. Brewington,* 512 F.3d 995 (7th Cir.2008), expressly noted that *Fex* had "rejected" the argument based on *Hutchins*[4]—holding "that, even if delivery of the notice is delayed due to negligence or malice on the part of prison authorities, the IAD's clock does not start running until the notice is actually received by both the prosecutor and the court." *Id.* at 997 (citing *Fex,* 507 U.S. at 49–50, 113 S.Ct. 1085). Moreover, *Brewington* involved circumstances similar to Bowlings'. Brewington was incarcerated in Indiana when he was informed on February 24, 2006, of his indictment in federal court. On that date, he was given forms, which he completed, to exercise "his right under the IAD to demand a speedy trial, and his demand was received by the U.S. Attorney's office on March 7, 2006," but "the district court never received a copy of the demand." 512 F.3d at 996. Seven months later, he was brought into federal court. Brewington moved for a dismissal and argued that the 180–day period should have been triggered by the prosecuting attorney's receipt of his demand. The district court "concluded that the 180–day clock

---

**3.** In his reply, Bowling asserts that *Fex* did "not reach the question of if the prosecutor and the court must both receive the request to invoke the provisions of the IAD, if the State officials fails to properly serve the prosecutor and the court." Reply at 2. Such a contention appears to conflict with the express holding stated at the conclusion of *Fex:*

> We hold that the 180–day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually

> been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him.

507 U.S. at 52, 113 S.Ct. 1085. To accept his contention would require that we disregard the holding that the IAD requires the request have "actually been delivered to the court and prosecuting officer." *Id.*

**4.** *Ward* relied on *Hutchins.* 435 N.E.2d at 581.

did not start running until *both* the court and the prosecutor received Brewington's demand," and denied his motion to dismiss. *Id.* Brewington appealed.

 The Seventh Circuit held that interpretation of the 180–day trigger "begins (and in this case ends) with the Supreme Court's opinion in *Fex*," which

> held that the 180–day clock "does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him."

512 F.3d at 997 (quoting *Fex*, 507 U.S. at 52, 113 S.Ct. 1085). As to Brewington's argument that the dual-delivery requirement "serves no purpose and that providing notice only to the prosecutor should be enough to start the running of the IAD clock," it concluded such arguments were "more appropriately addressed to the legislature" of the states which adopted the IAD's test. *Id.*

Bowling testified that he had received a copy of the paperwork constituting Exhibit A. As noted above, the forms contain multiple references to the requirement that an IAD early trial request must be sent to *both* the court and the prosecutor's office. Yet, as the trial court found, there is no evidence that Bowling ever attempted to confirm that his request had been forwarded to both entities. Bowling did not elicit for the trial court any testimony for affidavit from any official of the London facility as to the transmittal of Exhibit A's IAD documents. Thus, there was no evidence that any notice was sent to the trial court, and no evidence as to what was sent to the prosecutor's office. Accordingly, the rec-

ord cannot establish that Bowling "caused to be delivered" to *either* the trial court or the prosecutor's office his IAD early trial request. *Fex*, 507 U.S. at 47, 113 S.Ct. 1085 (quoting IAD Art. 3(a))d).[5] The IAD "unquestionably requires delivery," and without delivery, the IAD's 180–day clock "does not commence." *Id.* at 52, 113 S.Ct. 1085. Therefore, the trial court did not err when it denied Bowling's motion to dismiss the Indiana charge pending against him.

Affirmed.

MAY, J., concurs.

KIRSCH, J., concurs in result.

---

5. We note our agreement with the trial court that the requirement for notice delivery to both the court and the prosecutor's office "presents a dual tracking system to insure that both entities receive timely notice and are in a position to timely process the request" for an early trial pursuant to the IAD provisions. (App.71).